Laderrick Dedemon SMITH, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 05–04–01423–CR, 05–04–01424–CR,
05–04–01425–CR, 05–04–01426–CR.

Court of Appeals of Texas,
Dallas.

Oct. 20, 2005.

Rehearing Overruled Dec. 12, 2005.

Edgar A. Mason, Dallas, appellant.

William T. (Bill) Hill, Jr., Christi Dean, Asst. Dist. Atty., Dallas, for State.

Before Justices FITZGERALD, LANG–MIERS, and MAZZANT.

## OPINION

Opinion by Justice LANG–MIERS.

LaDerrick Dedemon Smith was charged by indictment with the felony offense of possession of marijuana[1] in an amount of five pounds or less but more than four ounces.[2] The trial court convicted Smith and assessed punishment at two years in a state jail facility, probated for five years. Subsequently, Smith was indicted for three new felony offenses—possession with intent to deliver cocaine in an amount of 400 grams or more,[3] possession of marijuana in an amount of five pounds or less but more than four ounces,[4] and unlawful possession of a firearm by a felon.[5] Based on these new offenses and other violations of the terms and conditions of his probation, the State moved to revoke Smith's probation.[6]

Smith filed a motion to suppress,[7] waived a jury, and tried all of the cases together to the court. At the conclusion of the evidence, the trial court denied Smith's motion to suppress, found Smith guilty of the three new felonies, and revoked his probation in the other cases. The trial court assessed punishment at two years' confinement in a state jail facility on the probation revocation case, forty years' confinement and a fine of $5,000 in the possession of cocaine case, two years' confinement in a state jail facility in the possession of marijuana case, and ten years' confinement in the felon in possession of a firearm case. The judge also orally pronounced an affirmative deadly weapon finding in all of the cases, but the judgments reflected a deadly weapon finding only in the possession of cocaine and possession of marijuana cases.

On appeal, Smith argues the trial court erred when it denied his motion to suppress evidence, his counsel was ineffective for failing to object to the admission of the seized evidence, the evidence is insufficient to support the deadly weapon findings, and the evidence is insufficient to support his conviction of felon in possession of a firearm. We affirm the trial court's judg-

---

1. The statutory spelling of the substance is "marihuana." *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.002(26), .120, .121, .122 (Vernon 2003 & Supp.2004–05). The common spelling of the word is "marijuana," which is frequently used in trial court records. *Davis v. State,* 989 S.W.2d 859, 865 (Tex.App.-Austin 1999, pet. ref'd). The indictments in this case used the common spelling.

2. Trial court cause number F96–43186–JQ. Our case number is 05–04–01423–CR.

3. Trial court cause number F03–55434–Q. Our case number is 05–04–01424–CR.

4. Trial court cause number F03–55435–Q. Our case number is 05–04–01425–CR.

5. Trial court cause number F03–55436–MQ. Our case number is 05–04–01426–CR.

6. The State moved to revoke Smith's probation in three cases. Only one is on appeal.

7. Although Smith's motion to suppress appeared to have been filed only in the new felony cases, the record indicates the trial court considered the motion to suppress as filed in all of the cases.

ments in case numbers 05–04–01424–CR and 05–04–01425–CR. We modify the judgments in case numbers 05–04–01423–CR and 05–04–01426–CR and affirm as modified.

## BACKGROUND

A community police officer with the Dallas Police Department received complaints that drugs were being sold from 3709 Colonial in Dallas. He conducted surveillance of the location for about a month and observed people entering the house from the front and rear and exiting after a very short visit. He also observed people approach the house at a side window and leave after a short stay. He testified his observations were consistent with drug activity.

On September 9, 2004, he conducted surveillance of the location for about an hour. In that time, he saw one person go to the rear, two go to the side window, and two enter through the front door. After he left the area, he saw a known drug dealer in a known drug area and followed him. The drug dealer drove to 3709 Colonial, went inside, and stayed about three or four minutes. He reported his observations to Sergeant Misak and Officers Starr and Castro and then left the area.

Misak and five other police officers, all uniformed and in marked squad cars, went to the location to conduct a "knock and talk." Misak saw a "for rent" sign in the front yard and multiple front doors. Not knowing whether the location was a single residence, a duplex, or multiple apartments, he sent officers down both sides of the house to secure the back and to make contact at the back if no one answered at the front. Misak intended to knock on the front door and ask the resident about unusual behavior possibly related to narcotics that had been reported to the police.

Castro and Starr walked down one side of the house, headed to the back door. About half way down the side of the house, they smelled marijuana. Starr told Misak, who walked down the side of the house and also smelled the marijuana. Castro and Starr continued walking to the back of the house. As they did so, they came to a side window which contained an air conditioning unit covered by a wire cage. The window was not covered by curtains or blinds, and the air conditioning unit did not fill the window space. Castro and Starr looked through the window and saw two men, later identified as Smith and Boris Bonner, packaging what they believed to be cocaine into blue baggies. They also saw a large quantity of marijuana in plastic bags on the floor.

Smith and Bonner saw the officers looking through the window and immediately scooped up the cocaine and ran out of the room. At the same time, Castro and Starr identified themselves as police officers and ordered the men to the ground, but they kept running. Starr yelled to Misak, who was still at the front door waiting to knock, that the men were running to the front of the house. The officers thought the men were trying to destroy the cocaine, so Castro pushed the air conditioner to the side and entered the house through the window.

Misak heard the officers yelling on the side of the house and looked through a gap in the front window covering. He saw Smith running toward the front door and yelled at him to get down. Smith did not comply, so Misak told him to meet him at the front door. Smith said, "This isn't my house, I can't do that." Then Misak saw Smith get on his knees with his hands on his head, sit there for a moment, and then jump up and disappear from view. Misak testified that Smith came in and out of his view two or three times.

In the meantime, Castro entered through the window and opened the back door for the other officers who were able to detain Smith and Bonner in the front room of the house. An unidentified female was also in the front room. The officers conducted a protective sweep of the house during which they saw large gallon-size bags of marijuana, a plate with a scale and cocaine residue, a razor blade, and a pistol, all in plain view in the back room, and tools used to make crack cocaine and cocaine residue in plain view in the kitchen. The cocaine that Starr and Castro saw through the window was no longer in plain view, and the officers thought it had been destroyed or hidden.

During the protective sweep, Misak observed part of a blue plastic baggie protruding from a cabinet in the bathroom and decided to obtain a search warrant. During the search pursuant to the warrant, the officers seized $13,533.05 in cash, mostly in one, five, and twenty dollar denominations and 3.28 kilograms of cocaine from a "trap door" in the bathroom cabinet; 5.11 pounds of marijuana, several scales, and a razor blade from the back room; an SKS assault rifle with four live rounds and an Intratec 9mm pistol with eight live rounds from the back room; and a 9mm semiautomatic handgun with eight live rounds, a Glock .40 caliber semiautomatic handgun with four live rounds, and a baggie of marijuana from under the couch in the front room. The officers also seized the t-shirt Smith was wearing because it appeared to have cocaine residue on the front.

## Motion to Suppress

Smith filed a motion to suppress the evidence, alleging it was seized in violation of the Fourth Amendment to the United States Constitution and article 1, section 9 of the Texas Constitution.

■ We review a trial court's ruling on a motion to suppress under an abuse of discretion standard. *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim.App.2000). We give "almost total deference to a trial court's determination of historical facts" and review de novo the court's application of the law to those facts. *Id.* When the trial court makes no explicit findings of historical facts, we view the evidence in the light most favorable to the trial court's ruling. *Id.* at 328.

■ An accused may challenge a search under the federal and state constitutions only if he had a legitimate expectation of privacy in the place that was searched. *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Granados v. State,* 85 S.W.3d 217, 222–23 (Tex.Crim.App.2002). The accused bears the burden of demonstrating a legitimate expectation of privacy and may do so by "establishing that he had a subjective expectation of privacy in the place invaded that society is prepared to recognize as reasonable." *Granados,* 85 S.W.3d at 223.

■ We consider several factors in determining whether the accused's claim of privacy is objectively reasonable:

(1) whether the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, prior to the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy.

*Id.* None of these factors is dispositive; rather, "we examine the circumstances surrounding the search in their totality." *Id.*

■ In his first issue, Smith argues the trial court should have suppressed the evidence because he had a legitimate expectation of privacy in the house. He contends the police did not have a warrant to enter the residence and that no exception to the warrant requirement applied to this case. The State argues Smith lacks standing to complain of the search. We agree with the State.

Smith did not testify. He called his sister as a witness, who testified she leased the house for $100 per month so Smith could live there because he was unable to obtain credit. She said he had permission to be at the house. But she also testified that she owned the couch, television, and bed in the house. When asked whether she also lived at the house, she said "not all the time." Smith did not offer a copy of the lease agreement or any other evidence substantiating his sister's testimony that she had a right to give him permission to be at the house. Smith offered no evidence the house was under his exclusive control, that he kept any personal belongings in the house, or any documentation to support his right to be at the house. He offered no evidence that he put the house to private use. Although the front window was partially covered by blinds, the side window was not covered, indicating Smith did not take "normal precautions customarily taken by those seeking privacy." *Id.*

Additionally, the State introduced Smith's driver's license and identification card, both of which contained an address on Heatherwood Street in Duncanville and not the address of the house in Dallas. Misak testified that he thought documents may have been seized during the search, but he could not identify the documents or whether they contained any proof that Smith lived there. The documents were not offered into evidence. And when Misak ordered Smith to open the door, Smith said, "This isn't my house, I can't do that."

The trial court observed the demeanor of the witnesses and was free to believe or disbelieve the testimony. We conclude the trial court did not abuse its discretion by denying Smith's motion to suppress. *See Davis v. State*, 119 S.W.3d 359, 367 (Tex. App.-Waco 2003, pet. ref'd) (evidence supports denial of motion to suppress where appellant did not own house, had no documentation to support right to be at house, stayed there two or three nights a week, had no ability to exclude anyone, did not take normal precautions to seek privacy). We overrule Smith's first issue.

Because we conclude the trial court did not abuse its discretion by denying Smith's motion to suppress, we do not reach his second issue which complains trial counsel was ineffective by failing to object to the admission of certain evidence seized pursuant to the search warrant.

### SUFFICIENCY OF THE EVIDENCE

In his next three issues, Smith challenges the sufficiency of the evidence to support (1) the finding that he used or exhibited a deadly weapon during the commission of the offenses and (2) his conviction for felon in possession of a firearm.

■ When reviewing challenges to the legal sufficiency of the evidence, we apply well-known standards. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Garcia v. State*, 57 S.W.3d 436, 441 (Tex.Crim.App.2001). Viewing the evidence in the light most favorable to the verdict, we determine whether a rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex.Crim.App.2005); *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex.Crim.App.2004).

In a factual sufficiency review, we view all of the evidence in a neutral light and will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *Escamilla*, 143 S.W.3d at 817 (citing *Zuniga v. State*, 144 S.W.3d 477, 484–85 (Tex.Crim. App.2004)). The question under a factual sufficiency challenge is whether, considering all of the evidence in a neutral light, a jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga*, 144 S.W.3d at 484. Evidence can be factually insufficient if the evidence is too weak to support the finding of guilt beyond a reasonable doubt, or contrary evidence exists that is strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Id.* at 484–85.

## A. FELON IN POSSESSION OF FIREARM

In his fourth issue, Smith challenges the sufficiency of the evidence to support his conviction of felon in possession of a firearm, alleging (1) the State did not prove he was the same person convicted of the prior felony, and (2) there was no evidence to show he possessed a firearm.

### 1. Identity

In the probation revocation case, Smith and the State stipulated that Smith violated the terms and conditions of his probation by failing to report as required. In making the oral stipulation, the State misread the cause number of the case as F96–343186, adding an extra "3." Because of this, Smith contends the State did not prove he was the same defendant as the one convicted of the felony in the probation case. Without connecting him to this prior felony conviction, Smith argues the State failed to prove he was a felon in possession of a firearm. We disagree.

When the trial court called these cases for trial, he read the case numbers into the record: "Before the Court we have Cause ... F96–43186, all styled the State of Texas versus LaDerrick Smith." The court asked Smith for his plea in the motion to revoke in F96–43186, and Smith pleaded "not true." At the conclusion of testimony, the State asked the court to take judicial notice of its file in F96–43186–JQ. The State also offered a certified copy of the judgment and indictment in that case. Smith had "no objections" to the trial court taking judicial notice of the file or to the admission of the judgment and indictment in the probation revocation case. Even though the State later misread the cause number, it did not misread the cause number when it asked the court to take judicial notice of the court's own files.

The record in cause F96–43186–JQ shows that it was heard in the 204th Judicial District Court, the same court which heard the cases now on appeal. It is clear from the record that the same trial judge presided over the original proceeding in F96–43186–JQ, the revocation proceeding in that case, and the felon in possession of a firearm case. We conclude there was adequate evidence upon which the trial court could find by a preponderance of the evidence that Smith was the person with the prior felony conviction. *See Miller v. State*, 21 S.W.3d 327, 330 (Tex.App.-Tyler 1999, pet. ref'd).

### 2. Possession of Firearm

Smith also challenges the legal and factual sufficiency of the evidence to prove he knowingly possessed a firearm. To establish unlawful possession of a firearm by a felon, the State was required to show that Smith was previously convicted of a felony offense and possessed a firearm

after the conviction and before the fifth anniversary of his release from confinement or from supervision, whichever date is later. Tex. Pen.Code Ann. § 46.04(a)(1) (Vernon Supp.2004–05); *see also Martinez v. State*, 986 S.W.2d 779, 780 (Tex.App.-Dallas 1999, no pet.). "Possession means actual care, custody, control, or management." Tex. Pen.Code Ann. § 1.07(a)(39) (Vernon Supp.2004–05). A person commits a possession offense only if he voluntarily possesses the prohibited item. *See id.* § 6.01(a) (Vernon 2003). "Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." *Id.* § 6.01(b).

 The State must show appellant exercised actual care, control, or custody of the firearm; he was conscious of his connection with the firearm; and he possessed the firearm knowingly or intentionally. *Bates v. State*, 155 S.W.3d 212, 216 (Tex.App.-Dallas 2004, no pet.); *Smith v. State*, 118 S.W.3d 838, 841 (Tex.App.-Texarkana 2003, no pet.). But the State does not have to prove the accused had exclusive possession of the firearm; joint possession is sufficient to sustain a conviction. *See Cude v. State*, 716 S.W.2d 46, 47 (Tex. Crim.App.1986). When there is no evidence the appellant was in exclusive control of the place where the firearm was found, the State must offer additional, independent facts and circumstances affirmatively linking him to the firearm. *See Poindexter v. State*, 153 S.W.3d 402, 406 (Tex.Crim.App.2005); *Grantham v. State*, 116 S.W.3d 136, 143 (Tex.App.-Tyler 2003, no pet.); *Davis v. State*, 93 S.W.3d 664, 667 (Tex.App.-Texarkana 2002, pet. ref'd). The purpose of affirmatively linking the accused to the firearm is to protect innocent bystanders from conviction based solely on their fortuitous proximity to the firearm. *See Poindexter*, 153 S.W.3d at 406.

 In determining whether sufficient affirmative links exist, we examine factors such as whether the firearm was in plain view, whether appellant owned the residence where the firearm was found, whether he was in close proximity to the firearm and had ready access to it or whether it was found on him, whether he attempted to flee, whether his conduct indicated a consciousness of guilt, whether he had a special connection to the firearm, whether the firearm was found in an enclosed space, and whether he made incriminating statements. *See Bates*, 155 S.W.3d at 216–17. No set formula of facts exists to dictate a finding of affirmative links sufficient to support an inference of knowing possession of contraband. *Taylor v. State*, 106 S.W.3d 827, 830 (Tex.App.-Dallas 2003, no pet.). It is the "logical force" of the factors, not the number of factors present, that determines whether the elements of the offense have been established. *Id.; Hawkins v. State*, 89 S.W.3d 674, 677 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd).

Smith relies on *Nguyen v. State*, 54 S.W.3d 49 (Tex.App.-Texarkana 2001, pet. ref'd), to support his argument that the evidence is insufficient to support his conviction for felon in possession of a firearm. In *Nguyen*, a police officer stopped the driver of a vehicle for speeding. During the brief time before the driver pulled over, the officer saw the passenger, Nguyen, reach his arm to the back of the car. The officer searched the car and found a gun hidden under the back seat behind the driver. The officer testified he did not see the gun in Nguyen's hand, the car belonged to someone else, and no useable fingerprints were found on the gun. The evidence showed the car pulled over twenty seconds after the officer activated his

warning lights. The evidence also showed it would have been difficult for Nguyen to have lifted the back seat from his position in the front of the car in order to hide the gun. The court concluded the evidence was insufficient to support the deadly weapon finding. *Id.* at 52–55.

We think the evidence in this case is more like that in *Stubblefield v. State,* 79 S.W.3d 171 (Tex.App.-Texarkana 2002, pet. ref'd).[8] In *Stubblefield,* the police executed a search warrant at a house and found five people and various quantities of drugs. Stubblefield was lying on the couch next to a coffee table when the officers entered. A large patty of cocaine was lying on the coffee table in plain view. Other drugs and drug paraphernalia were also found in plain view throughout the house. There was no evidence that Stubblefield was under the influence of a controlled substance, that he attempted to flee when the officers entered the house, or that he made incriminating statements or furtive gestures during the search. The officers found no drugs, money, or weapons on Stubblefield's person. Stubblefield did not lease the house and did not pay for any utilities at the house, but the testimony showed Stubblefield had been living in the house for two or three weeks. *Id.* at 174–75.

The evidence linking Stubblefield to the contraband showed (1) he was present in the house during the search, (2) the contraband was in plain view, (3) Stubblefield was in close proximity to the contraband, (4) additional contraband was found behind the couch Stubblefield was lying on, (5) he had been living in a bedroom of the house for two or three weeks, (6) there was a large amount of contraband and, prior to the officers' entry, another occupant had been cutting the cocaine and preparing it for sale in small portions, (7) other drugs were located in various places in the house, (8) other drug paraphernalia was in plain view, and (9) the drugs were in an enclosed space. *Id.* at 175. The court concluded this evidence was sufficient to justify the finding that Stubblefield possessed the contraband, pointing out that possession may be joint. *Id.* at 174–75; *see Frierson v. State,* 839 S.W.2d 841, 849 (Tex.App.-Dallas 1992, pet. ref'd) (evidence showed appellant exercised at least joint control over contraband).

In this case, the evidence affirmatively linking Smith to the firearms showed that (1) citizen complaints and undercover surveillance of the house indicated it was being used as a drug house; (2) an officer testified that fifty percent of drug transactions involve firearms; (3) Smith was present when the search was conducted; (4) officers observed Smith packaging the cocaine for sale in smaller portions; (5) a loaded pistol was in plain view and within Smith's reach on the floor as he packaged the cocaine; (6) a loaded SKS assault rifle was in the same room and readily accessible to Smith; (7) over five pounds of marijuana were found in plain view in the back room in close proximity to the firearms; (8) Smith attempted to flee when he saw police; and (9) two semiautomatic handguns lying next to a baggie of marijuana were found under the couch in another room in the house. We conclude this evidence is legally sufficient to link Smith to the firearms.

---

**8.** Although *Stubblefield* involved unlawful possession of a controlled substance rather than unlawful possession of a firearm as in this case, the affirmative links analysis is the same. *Bates,* 155 S.W.3d at 216 (analyze sufficiency of evidence in felon in possession of firearm case under rules adopted for determining sufficiency of evidence in cases of unlawful possession of controlled substance); *see Young v. State,* 752 S.W.2d 137, 140 (Tex. App.-Dallas 1988, pet. ref'd) (same).

Smith also complains the evidence is factually insufficient. We will set aside the verdict only if the evidence supporting the verdict is so weak as to render the verdict clearly wrong and manifestly unjust. *Zuniga*, 144 S.W.3d at 481. To be clearly wrong and manifestly unjust, the verdict must shock the conscience or clearly demonstrate bias. *Id.* The reviewing court must give deference to the verdict of the fact finder, as well as its determinations involving the credibility and demeanor of witnesses. *Id.* at 482. It is not our duty to disregard, realign, or weigh the evidence. *Matson v. State*, 819 S.W.2d 839, 846 (Tex.Crim.App.1991).

The evidence contrary to the verdict showed (1) there were two other people present during the search; (2) contrary to his sister's testimony at trial, Smith told one of the officers he did not live there; (3) one of the officers testified Smith did not appear to be guarding the drugs with the firearms and that he could not just reach over for the gun; and (4) the police did not fingerprint or check the registration of the firearms.

Giving due deference to the fact finder's assessment of the witnesses' credibility and resolution of evidentiary conflicts, we conclude the evidence is not too weak to support the finding of guilt beyond a reasonable doubt and the contrary evidence is not so strong that the beyond-a-reasonable-doubt standard could not have been met. As a result, we conclude the evidence is factually sufficient to support the conviction. We overrule Smith's fourth issue.

### B. Deadly Weapon Finding

Smith also challenges the sufficiency of the evidence to support the trial court's affirmative finding of a deadly weapon. In his third issue, Smith initially argues the trial court had no authority to make an affirmative finding of a deadly weapon because the State did not plead the use of a deadly weapon in the indictment, the parties did not stipulate to the use of a deadly weapon, and the findings increased the punishment maximum in violation of the law.

At trial, Smith objected to the deadly weapon finding "to preserve our appeal— or the right to appeal on the motion to suppress" and argued the evidence did not support a finding that a deadly weapon "was used to facilitate or guard the drugs in this case." Smith did not object at trial to the deadly weapon finding on the grounds he raises on appeal. Because his complaint on appeal does not comport with his trial objection, he presents nothing for our review. TEX.R.APP. P. 33.1; *See Dixon v. State*, 2 S.W.3d 263, 273 (Tex.Crim.App. 1998) (citing *Broxton v. State*, 909 S.W.2d 912, 918 (Tex.Crim.App.1995)); *Jones v. State*, 111 S.W.3d 600, 604 (Tex.App.-Dallas 2003, pet. ref'd). We overrule Smith's third issue.

In his fifth issue, Smith argues the evidence is legally and factually insufficient to prove he used or exhibited a deadly weapon during the commission of the offense.

In determining the sufficiency of the evidence to support a finding that the defendant used or exhibited a deadly weapon during the commission of a felony offense, we must determine "whether a rational trier of fact could find beyond a reasonable doubt that the mere possession of firearms *facilitated* the associated felony." *Gale v. State*, 998 S.W.2d 221, 224 (Tex.Crim.App.1999). In our review, we must be mindful that the fact finder is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000).

■ When it is shown that a defendant used or exhibited a deadly weapon in the commission of a felony offense, the trial court must enter a finding to that effect in the judgment. *See* Tex.Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (Vernon Supp.2004–05). "Used" a deadly weapon during the commission of a felony offense "means that the deadly weapon was employed or utilized in order to achieve its purpose." *Patterson v. State*, 769 S.W.2d 938, 941 (Tex.Crim.App.1989). A deadly weapon may be "used" even if it is merely possessed, if that possession facilitates the associated felony offense. *Id.* "Exhibited" a deadly weapon means the weapon was "consciously displayed" during the commission of the offense. *Id.*

Smith contends because there was no evidence the guns were within his reach or under his control and because he was not the only occupant of the house, the evidence will not support a finding that he used or exhibited a deadly weapon. He argues it was only in his attempt to avoid the police that he entered the room where the guns were found. In support of his argument, Smith relies on *Wynn v. State*, 847 S.W.2d 357 (Tex.App.-Houston [1st Dist.] ), *aff'd,* 864 S.W.2d 539 (Tex.Crim. App.1993), and *Jackson v. State*, 857 S.W.2d 678 (Tex.App.-Houston [14th Dist.] 1993, no pet).

In *Wynn,* the court reversed a deadly weapon finding because the evidence showed the appellant was not within reach of the drugs and guns, he was not in the house with the drugs and guns, he was not the only occupant of the house, the owner of the guns was not determined, and no guns or drugs were found in the only room connected to the appellant. *Wynn,* 847 S.W.2d at 360–61. In *Jackson,* the court reversed a deadly weapon finding because the guns were "merely found" and were not used or exhibited. *Jackson,* 857

S.W.2d at 682. When the police executed the search warrant, the appellant was not in the house and had not been seen in the house when the police first visited and obtained the information for the search warrant. *Id.*

■ Although the police never determined the owner of the guns in this case, ownership is not necessary to a finding that a person used a deadly weapon in violation of article 42.12, section 3g. *Dimas v. State*, 987 S.W.2d 152, 155 (Tex. App.-Fort Worth 1999, pet. ref'd). In *Dimas,* the police raided the appellant's home and found drugs and rifles in the garage and attached apartment and a pistol in the master bedroom of the main home. Appellant pleaded guilty to drug possession, but denied he owned the guns and argued the evidence was insufficient to prove he used or exhibited a deadly weapon. Appellant denied having access to the garage apartment where the rifles were found, and also argued there was no evidence to connect the pistol found in his home to the drugs found in the garage and apartment. In concluding the evidence supported the deadly weapon finding, the reviewing court noted that the rifles were loaded, readily accessible, and within inches of the cocaine. *Id.* at 154. It also noted that even though the pistol was found in the main home, away from the drugs, testimony showed that a large amount of drugs and cash were found at the address and that "drug dealers often 'use' weapons to protect themselves, their drugs and their money." *Id.* at 155.

■ We have already concluded that Smith possessed the firearms. Simple possession may constitute "use" of a deadly weapon if that possession facilitated the underlying offense. *Patterson,* 769 S.W.2d at 941. Contrary to Smith's contention that the guns were found in another room, both the pistol, which was in plain view,

and the SKS assault rifle were in the back room within feet of Smith as he packaged the cocaine. Both firearms were loaded and readily accessible to Smith. The pistol and assault rifle were in close proximity to the marijuana and the cocaine. Additionally, Smith attempted to flee when he saw the officers. Smith ran to the front room where officers found two semiautomatic handguns under a couch next to a baggie of marijuana. Smith possessed over three kilograms of cocaine, five pounds of marijuana, and $13,000 in cash. And he stipulated to evidence offered by Detective Gipson, a sixteen-year narcotics detective, that firearms are present in approximately half of drug transactions. *See Wilson v. State*, 132 S.W.3d 695, 698 (Tex. App.-Amarillo 2004, pet. ref'd) (it is "rather settled" that weapons are associated with the drug trade) (citing *Carmouche*, 10 S.W.3d at 330).

We conclude a rational fact finder could have found that Smith "used" a deadly weapon to facilitate the possession of the cocaine and marijuana. *See Patterson*, 769 S.W.2d at 942; *Gale*, 998 S.W.2d at 226 (unloaded weapons found in close proximity to marijuana sufficient to show appellant used weapon to facilitate possession of marijuana); *Coleman v. State*, 145 S.W.3d 649, 654–55 (Tex.Crim.App.2004) (display, use, or reference to weapon not prerequisite for finding appellant "used" deadly weapon); *Moreno v. State*, 978 S.W.2d 285, 289 (Tex.App.-Fort Worth 1998, no pet.) (evidence cocaine found in basket in bedroom closet, guns found next to basket, ammunition found next to guns, and appellant in bedroom with box containing cocaine and cash sufficient to support finding appellant used deadly weapon even though appellant not only occupant of house).

We conclude the evidence is legally and factually sufficient to support the trial court's affirmative finding of a deadly weapon. We overrule Smith's fifth issue.

## STATE'S CROSS-POINT

■ In a cross-point, the State argues the trial court made an affirmative finding in all of the cases that a deadly weapon was used or exhibited during the commission of the offenses but that the judgments in two of the cases do not reflect that finding. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12 § 3g(a)(2). The State requests we modify the judgments in causes F03–55436–MQ and F96–43186–JQ to correctly reflect that finding.

■ The trial court, as fact finder, orally pronounced sentence and stated, "Court will make an affirmative finding of a deadly weapon in all cases." However, the written judgments in the probation revocation case and the felon in possession of a firearm case each contain "no finding" under the heading "Findings on Deadly Weapon, Bias or Prejudice, and/or Family Violence." When the oral pronouncement of sentence in open court and the written judgment conflict, the oral pronouncement controls. *Thompson v. State*, 108 S.W.3d 287, 290 (Tex.Crim.App.2003). The solution is to modify the written judgment to conform to the sentence orally pronounced. *Id.*

The reviewing court has the power to modify judgments to make the record speak the truth when it has the necessary data and information to do so. TEX.R.APP. P. 43.2(b); *Thompson*, 108 S.W.3d at 290; *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.-Dallas 1991, pet. ref'd) (citing *Aguirre v. State*, 732 S.W.2d 320, 327 (Tex. Crim.App. [Panel Op.] 1982)). Because the judgments do not reflect the sentence orally pronounced by the trial court, we modify the judgments in F03–55436–MQ and F96–43186–JQ to conform to the oral pronouncement by adding under the head-

ing "Findings on Deadly Weapon, Bias or Prejudice, and/or Family Violence":

THE COURT FINDS THAT DEFENDANT HEREIN USED OR EXHIBITED A DEADLY WEAPON DURING THE COMMISSION OF SAID OFFENSE, TO WIT: A FIREARM.

## CONCLUSION

We conclude the trial court did not abuse its discretion when it denied Smith's motion to suppress the evidence. We further conclude the evidence is sufficient to support the finding that Smith used a deadly weapon during the commission of the offenses and the conviction for unlawful possession of a firearm. Because of our disposition of Smith's first issue, we do not reach his claim of ineffective assistance of counsel. We modify the judgments in case numbers 05–04–01423–CR and 05–04–01426–CR to reflect the trial court's affirmative finding of use of a deadly weapon. As modified, we affirm the judgments of the trial court. We affirm the trial court's judgments in case numbers 05–04–01424–CR and 05–04–01425–CR.