Opinion issued June 28, 2007










 






In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00793-CR






MICHAEL TORRES, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 177th District Court

Harris County, Texas

Trial Court Cause No. 1070020






O P I N I O N

 After a bench trial, appellant was convicted of possession with intent to deliver
cocaine weighing at least 400 grams. The trial court assessed punishment at 60 years'
confinement and a $100,000 fine. The trial court also made an affirmative finding on
a deadly weapon allegation. In his sole issue on appeal, appellant contends the
evidence is legally and factually insufficient to support the deadly weapon finding.
Appellant asks that we remand for a new punishment hearing or, alternatively, delete
the deadly weapon finding. We reform the judgment to delete the deadly weapon
finding, and, as reformed, affirm.

BACKGROUND

 J. Garza, an undercover officer with the Houston Police Department, met with
Rodolfo Aguilar and the two began negotiating the purchase of five kilograms of
cocaine. On May 23, Garza called Aguilar and they agreed to meet at a restaurant in
Houston. Garza went to the location with R. Rodriguez, another undercover officer. 
Aguilar arrived, accompanied by appellant. Aguilar wanted $16,000 per kilogram of
cocaine, and Garza countered with $15,500. Aguilar looked towards appellant for
affirmation that $15,500 was an acceptable price.

 Garza told appellant and Aguilar that he would let them know where to bring
the cocaine once they had it in their possession, and they agreed. Aguilar and
appellant left the restaurant, and surveillance officers followed them to a nearby
apartment complex.

 Aguilar called 10-15 minutes later and told Garza to meet him in the parking
lot of a grocery store. Garza and Rodriguez arrived at the parking lot first and waited. 
When Aguilar and appellant arrived, Garza walked up to their car and got inside. 
Once he found out that Aguilar and appellant did not have the cocaine, Garza asked
them what was the problem. Appellant, who was driving, said that the man who had
the cocaine did not want to leave his apartment with it. Garza told appellant that he
did not want to go to the apartment, and the two men argued about it for a short while. 
Garza finally agreed to go to the apartment complex, but still refused to go inside the
apartment. Appellant agreed that he would bring the cocaine to Garza in the parking
lot of the apartment complex.

 Garza and Rodriguez followed appellant and Aguilar to an apartment complex. 
When they arrived, appellant got out, approached Garza, and said, "Okay, let's go to
the apartment." Garza again tried to convince appellant to go inside, get the cocaine,
and bring it out. Appellant, however, refused, stating that the man who owned the
cocaine would not leave the apartment. Reluctantly, Garza agreed to go into the
apartment with appellant. Rodriguez and Aguilar remained behind in the parking
lots.

 When he entered the apartment, Garza immediately noticed that there were
three other people inside, not just one, as appellant had told him there would be. 
Garza was concerned because he was outnumbered four to one. Appellant entered
the apartment and sat down near the door. At that point, a fifth man, Angel Barajas,
came out of the bedroom of the apartment. Garza asked who was in charge, and
Barajas responded that he was.

 Garza followed Barajas into the back bedroom where he saw four kilogram-sized packages of cocaine on the mattress. Next to the cocaine was a box of .22
caliber bullets. Garza believed that the bullets were placed next to the cocaine to
warn Garza that the men were armed. Garza told Barajas that he needed to examine
the cocaine, so Barajas went to the kitchen and returned with a butcher's knife, which
he handed to Garza. Barajas used the knife to open one of the packages. Garza, in
an effort to get the knife away from Barajas, offered to hold the knife while Barajas
peeled back the plastic wrap on the cocaine. Garza looked at the cocaine, said that 
it looked okay, and threw the knife to the far side of the bed.

 Garza told Barajas that he would be back in an hour with the money, and he left
the apartment, accompanied by appellant. As he was leaving, appellant asked Garza
if he liked the product and if everything was okay. Garza told appellant that he liked
it and would return in an hour.

 When Garza got back in the car with Rodriguez, he called his supervisor and
reported that he had seen four kilograms of cocaine in the apartment. He also gave
a description of the suspects and the car that appellant and Aguilar were driving. The
surveillance officers had a patrol unit stop appellant and Aguilar. Police also arrested
Barajas, the owner of the apartment in which the cocaine was discovered.

 When the officers entered the apartment, they found the four kilograms of
cocaine on top of the bed. The box of ammunition was no longer on the bed, but was
discovered in the closet. Two handguns were recovered from the house. A .40
caliber handgun was found under the cushion of a chair in the front room of the
apartment, and another gun, with a silencer, was found in a paper bag on the counter
in the kitchen. The officer who recovered the gun from the bag on the counter
testified that it was pointed in such a way that someone standing in the kitchen would
have had easy access to it, and it was pointed in the direction where Garza was
participating in the drug transaction.

 At trial, Garza testified that he learned from his experience working undercover
narcotics, that weapons were used "all the time" to protect the drugs, the money, and
the dealers themselves from both the police and other people trying to rob the drug
dealers. Garza said that he did not see any weapons while he was in the apartment
and had not discussed weapons with appellant. Garza was not surprised to learn that
weapons were recovered from the apartment. However, Garza never saw appellant
near the place where either of the weapons was located.

DEADLY WEAPON FINDING


 In his sole issue on appeal, appellant argues that the evidence is legally and
factually insufficient to support the deadly weapon finding.


A. Standard of Review

 In reviewing a legal-sufficiency challenge, we view the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. King v.
State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); Johnson v. State, 23 S.W.3d 1,
7 (Tex. Crim. App. 2000).

B. Law and Analysis

 The State argued that appellant was guilty, as a party, of the offense of
possession with intent to deliver. Likewise, the State argued that appellant was
guilty, as a party, of using or exhibiting a deadly weapon during the commission of
the offense. (1) The evidence also showed that appellant was guilty, as a party, to
Barajas's possession of the cocaine with intent to deliver. (2) Regarding a party's
liability for the use of a deadly weapon by another, the Texas Code of Criminal
Procedure provides as follows:

 (a) The provisions of Section 3 of this article do not apply to:

 (2) a defendant when it shown that a deadly weapon as defined in Section 1.07,
Penal Code, was used or exhibited during the commission of a felony offense
or during immediate flight therefrom, and that the defendant used or exhibited
the deadly weapon or was a party to the offense and knew that a deadly
weapon would be used or exhibited. On an affirmative finding under this
subdivision, the trial court shall enter the finding in the judgment of the court. 
On an affirmative finding that the deadly weapon was a firearm, the court shall
enter that finding in its judgment.


Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (Vernon 2006) (emphasis added).


Evidence that appellant personally used or exhibited a deadly weapon is not
necessarily required when the appellant is a party. Sarmiento v. State, 93 S.W.3d
566, 569 (Tex. App.--Houston [14th Dist.] 2002, pet. ref'd). When the appellant is
a party, evidence that appellant knew a deadly weapon would be used or exhibited is
sufficient to support a deadly weapon finding. Johnson v. State, 6 S.W.3d 709, 713
(Tex. App.--Houston [1st Dist.] 1999, pet. ref'd).

 Appellant concedes that he was a party to the offense of possession with intent
to deliver. Similarly, he does not argue that his co-defendants did not use or exhibit
a deadly weapon. Appellant, however, contends that there is legally and factually
insufficient evidence to support the trial court's finding that he knew a deadly weapon
would be used in the commission of the offense. We agree.

 There is nothing in the record to show that appellant was aware that a deadly
weapon would be used in the commission of the offense. Appellant never mentioned
weapons; he did not own the apartment in which the weapons were discovered; and
appellant was never in the proximity of the weapons. He sat near the door, and the
guns were discovered in a bag on the kitchen counter and in the cushions of a chair
that was not near appellant. The ammunition was seen on the bed in the same room
with the cocaine. However, appellant was never in that room. The guns were not
visible to anyone entering the apartment, including appellant. Although Garza
testified that guns are commonly used to protect drug dealers and their merchandise,
there is nothing in the record to show that appellant knew that guns were present in
the apartment in this case.

 The State cites Smith v. State, 176 S.W.3d 907, 919-20 (Tex. App.--Dallas
2005, pet. ref'd), Coleman v. State, 145 S.W.3d 649,653-55 (Tex. Crim. App. 2004),
and Gale v. State, 998 S.W.2d 221, 225-26 (Tex. Crim. App. 1999), for the
proposition that guns discovered in a home after a drug raid were "used or exhibited"
during the offense because they were there to protect the drugs. We agree that any
employment of a deadly weapon, even its simple possession, constitutes a "use" if
such possession facilitates the associated felony. Patterson v. State, 769 S.W.2d 938,
941 (Tex. Crim. App. 1989). The cases cited by the State all involve the question of
whether the defendant himself "used or exhibited" a deadly weapon. In each of these
cases, the guns, which were discovered near the drugs, were recovered either from the
defendant's own house, see Coleman, 145 S.W.3d at 654 and Gale, 998 S.W.2d at
223, or were in plain view in the same room where the defendant was seen packaging
the drugs, see Smith, 176 S.W.3d at 919-20. 

 However, the cases do not discuss whether a person convicted as a party to the
possession offense knew that a weapon would be "used or exhibited" during the
commission of the offense. The correct focus in this case is not on whether the guns
were "used or exhibited" to facilitate the offense, but whether appellant knew that the
guns would be used or exhibited by his co-defendants to facilitate the offense.

 In Johnson v. State, the defendant, who served as the get-away driver in two
robberies, argued that there was insufficient evidence to show that a firearm would
be used or exhibited in the commission of the offenses. This Court disagreed, noting
that the evidence showed a "thoroughly planned robbery scheme," and that appellant
participated in the scheme by scouting the stores beforehand and driving the get-away
car afterward. 6 S.W.3d at 713. The Court found it particularly important that when
appellant and her co-defendant were arrested in her car, one of the co-defendants had
a gun, strapped to his chest, that matched the description of the firearm used in the
robberies. Id. From this evidence, the Court found it reasonable to conclude that the
appellant was aware that a deadly weapon would be used to commit the robberies. 
Id.

 In this case, although the evidence showed that appellant participated fully in
the agreement with his co-defendants to set up the sale of the cocaine, there is no
evidence that he knew that his co-defendants had weapons in the apartment. Whereas
Johnson's co-defendant had a weapon strapped to his chest, appellant's co-defendants
had hidden their weapons under a chair cushion and in a paper bag. Appellant was
not near the weapons, never discussed the weapons, was never in the room with the
ammunition and cocaine, and did not own the apartment or the weapons. Indeed,
there was no evidence that appellant had ever been inside the apartment before he
took appellant there.

 Because there is no evidence that appellant knew that a deadly weapon would
be used to commit the offense, the trial court erred by making the deadly weapon
finding. Because we sustain appellant's legal sufficiency argument, we need not
address his factual sufficiency claim and decline to do so.

CONCLUSION

 Having found the evidence legally insufficient to prove appellant knew that a
deadly weapon would be used or exhibited, we reform the trial court's judgment to
delete the deadly weapon finding.

 We affirm the judgment of the trial court as reformed.




 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Keyes and Higley.


Publish. Tex. R. App. P. 47.2(b).
1. 
' 
 
 - -- 
 - -- 
 
 
 
 
2. 
 
 
 
 -- 
' 
 
 
 § 
 
 -- 
 
 ' 
 
 ' 
 
 '