Opinion filed August 14, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed August 14,
2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-07-00028-CR 

                                                     __________

 

                          DERRICK
DEWAYNE JERNIGAN, Appellant

                                                             V.

                                        STATE
OF TEXAS,  Appellee

 



 

                                         On
Appeal from the 244th District Court

                                                           Ector
County, Texas

                                                 Trial
Court Cause No. C-31,597

 



 

                                             M E M O R A
N D U M   O P I N I O N

 

The
jury convicted Derrick Dewayne Jernigan of sexual assault.  Upon appellant=s plea of Atrue@ to the State=s
enhancement allegation, the jury sentenced appellant to confinement in the
Institutional Division of the Texas Department of Criminal Justice for a term
of thirty years. Appellant challenges his conviction in two issues.  We affirm.

                                                               Background
Facts








We
note at the outset that appellant does not challenge the sufficiency of the
evidence supporting his conviction.  The victim, B.C., had recently broken up
with her boyfriend.  Appellant was a friend of her boyfriend.  B.C. testified
that appellant called her in the early morning hours of November 5, 2002, to
see if he could come by her apartment to check on her.  She advised appellant
that he did not need to do so.  B.C. testified that appellant, accompanied by a
friend called ASkeet,@ subsequently entered her
apartment while she was asleep.

Appellant
sat down on a couch where B.C. and her five-year-old son were sleeping.  B.C.
testified that appellant Awanted
to be with her@ but
that she refused his advances.  When appellant attempted to pull B.C.=s shorts off, she asked him
if he was going to Arape
her@ in front of her
son.  B.C. testified that appellant responded by carrying her into a bedroom
whereupon he had sexual intercourse with her despite her repeated objections.

Appellant
testified on his own behalf during the guilt/innocence phase.  He admitted at
trial to calling B.C. and having sexual intercourse with her.[1] 
However, appellant asserted that the sex was consensual.  Appellant denied
attempting to pull off B.C.=s
shorts or carrying her away from her son into a bedroom.  He testified that
they had sex because A[they]
both had the look in [their] eye.@ 


                                                                         Issues

In
his first issue, appellant challenges the admission of testimony from a nurse
examiner that performed a sexual assault examination of B.C. after the
incident.  Appellant=s
second issue concerns a juror that informed the trial court after the jury was
selected and sworn that he knew B.C.=s
husband.  Appellant contends that the trial court erred in denying his motion
for mistrial in light of the juror=s
disclosure.

                                                       Nurse
Examiner=s
Testimony

Cecelia
Marie Wilmes, a registered nurse, testified that she has received specialized
training as a Sexual Assault Nurse Examiner (SANE) and that she has conducted
at least 427 sexual assault examinations.  She examined B.C. within a few hours
after the incident.  Wilmes began her examination by taking the following
history from B.C.:

[H]e came over to
talk to me and I was sitting on the couch.  When he pulled meBmy shorts down and he
picked me up with my back to him.  He took me out to the bed.  I told him to
quit, but he bent my head down and hurt my neck.  He tried to enter me from
behind, but couldn=t,
so he rolled me over.  I was fighting him. . . . I kept telling him to quit. 
Then he did it, he stuck his penis in my vagina and then he just laid there for
awhile and got up and left.

 








Wilmes
subsequently conducted a physical examination of B.C.  The prosecutor asked
Wilmes a  series of questions about her findings from the physical examination.[2] 
On at least seven occasions, Wilmes testified without objection that her
physical findings were consistent with the history that B.C. provided.  Late
during Wilmes=s direct
examination, the prosecutor asked her the following question: A[Y]our findings, here, [do
they] lean more or less towards non-consensual sex?@  Appellant objected to this question on the
basis that it called for speculation.  Appellant additionally objected to the
question on the basis that Wilmes was not qualified as an expert to answer the
question.  The trial court overruled both objections.  Wilmes answered the
question by stating, AThe
findings I find from the examination I gave her are consistent with her
history.@  Wilmes
subsequently testified again without objection that her findings were
consistent with B.C.=s
history.   Appellant argues on appeal that the challenged question and answer
exceeded the scope of Tex. R. Evid. 702
and 704 because they constituted improper opinion testimony regarding B.C.=s truthfulness.  See
Yount v. State, 872 S.W.2d 706, 710 (Tex. Crim. App. 1993) (An expert is
not permitted to give a direct opinion on the truthfulness of a witness because
this is not a subject on which an expert=s
testimony would assist a factfinder.).  Appellant=s
objection at trial did not comport with his complaint on appeal.  Thus,
appellant has waived this complaint.  Tex.
R. App. P. 33.1; Smith v. State, 176 S.W.3d 907 (Tex. App.CDallas 2005, pet. ref=d).  Moreover, Wilmes
offered the same testimony on seven previous occasions and on one subsequent
occasion without objection from appellant.  The improper admission of evidence
does not constitute reversible error if the same facts are shown by other
evidence that is not challenged.  Leday v. State, 983 S.W.2d 713, 717
(Tex. Crim. App. 1998).








Even
if we assume that appellant preserved his appellate complaint, we conclude that
Wilmes=s testimony was
proper.  Expert testimony is admissible if it helps the factfinder understand
the evidence or determine a fact in issue.  See Rule 702; Williams v.
State, 895 S.W.2d 363, 366 (Tex. Crim. App. 1994).  However, it must be
limited to situations in which the expert=s
knowledge and experience on a relevant issue are beyond that of an average
juror.  Duckett v. State, 797 S.W.2d 906, 914 (Tex. Crim. App. 1990), overruled
on other grounds by Cohn v. State, 849 S.W.2d 817, 819 (Tex. Crim.
App. 1993).  Expert testimony, by nature, may tend to show whether another is
telling the truth. This alone will not render that testimony inadmissible.  See
Duckett, 797 S.W.2d at 914.  In this instance, Wilmes did not offer direct
evidence regarding B.C.=s
truthfulness.  To the contrary, Wilmes=s
testimony was limited to her expert opinion on the physical findings that she
observed.  Moreover, we use an abuse of discretion standard in reviewing a
trial court=s
determination of a witness=s
qualifications as an expert and its judgment regarding the admission of any
expert testimony.  Ellison v. State, 201 S.W.3d 714, 723 (Tex. Crim.
App. 2006).  The record does not  contain any evidence that would support a
finding that the trial court would have abused its discretion in allowing
Wilmes=s testimony if
it had been presented with a proper objection.  Appellant=s first issue is overruled.

                                                                 Juror
Disclosure

During
voir dire examination, the prosecutor identified B.C. as a witness in the case
by using her surname at the time the offense occurred, i.e. B.H.  No one on the
jury panel stated that they knew B.H.  The prosecutor called B.C. as a witness
during the State=s
case-in-chief by referring to her as AB.H.@  B.C. stated at the outset
of her direct testimony that her name is AB.C.@  Later in her direct
testimony, B.C. stated that she is currently married to K.C. and that she
married him after the incident occurred.  At the next break, Juror Randy Smith
advised the trial court that he knew K.C. through work.  Juror Smith further advised
the court that he did not know K.C.=s
wife (B.C.) and that he did not have any knowledge of the case prior to his
service as a juror.  When asked by the trial court if his familiarity with K.C.
would influence his decision in the case, Juror Smith stated: ANo, I don=t think so.@

Upon
Juror Smith=s
disclosure of his familiarity with B.C.=s
husband, appellant moved for a mistrial.  Appellant=s trial counsel advised the court in
presenting the motion that she did not know that B.C. had remarried until B.C.
testified.  The prosecutor advised the court  that he was aware that B.C. had a
new surname but that he knew her by her previous surname.  The trial court
subsequently denied appellant=s
motion for mistrial.








The
denial of a motion for mistrial is reviewed for abuse of discretion.  Simpson
v. State, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003).  In cases where a
juror has revealed some knowledge of a witness after selection of the jury or
commencement of trial, it has been held that no error exists if the juror did
not intentionally conceal knowledge and is able to state that he or she can be
unbiased.  Hill v. State, 493 S.W.2d 847, 848 (Tex. Crim. App. 1973). 
Appellant concedes that there is no evidence that Juror Smith intentionally
withheld information during voir dire because B.C. was not identified by her
correct surname and her husband=s
name was not disclosed.  However, appellant contends that the trial court
should have granted a mistrial because the prosecutor was aware of B.C.=s correct surname and Juror
Smith was equivocal in stating his ability to be impartial.  We disagree.

Appellant
has not cited any authority supporting the contention that the State=s knowledge of a witness=s name is comparable to a
situation where a juror intentionally withholds material information during
voir dire.  Furthermore, the undisclosed information was not material in that
Juror Smith=s
relationship with the complainant was only as a work acquaintance.  Juror Smith
stated that he had no prior knowledge of the case and could be fair and
impartial.  The trial court was in the best position to evaluate Juror Smith=s sincerity and ability to
be fair and impartial when he replied, ANo,
I don=t think so,@ when the trial court asked
him if his familiarity with B.C.=s
husband would affect his impartiality.  See Mount v. State, 217
S.W.3d 716, 722 (Tex. App.C
Houston [14th Dist.] 2007, no pet.).  Accordingly, we give great deference to
the trial court in matters concerning the sincerity of a juror=s answers.  Id.  We
conclude that the trial court did not abuse its discretion in denying appellant=s motion for mistrial. 
Appellant=s second
issue is overruled.

                                                               This
Court=s Ruling

The
judgment of the trial court is affirmed.

 

 

TERRY McCALL

JUSTICE

 

August 14, 2008

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of: Wright, C.J.,

McCall, J., and Strange, J.









[1]Appellant denied having sex with B.C. when police
officers initially interviewed him.  He subsequently admitted having sex with
B.C. when the police confronted him with DNA evidence confirming that he had
had sexual intercourse with B.C.





[2]These findings included vaginal abrasions that Wilmes
observed.