# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-10-00212-CR

**Richard Lee Tolar, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. D-1-DC-07-301224, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal pursuant to *Anders v. California*, 386 U.S. 738 (1967). Appellant Richard Lee Tolar pleaded guilty to the offense of theft and was placed on deferred adjudication community supervision for a period of ten years. Subsequently, the State filed an amended motion to proceed with an adjudication of guilt. In the motion, the State alleged that Tolar had violated the terms and conditions of his community supervision by failing "to work faithfully at suitable employment as far as possible"; failing to pay court costs of $150.00; failing to pay supervision fees of $660.00; failing to pay restitution of $6,002.00; failing to pay the Crime Stoppers fee of $30.00; and committing three subsequent criminal offenses, specifically burglary of a building, on March 29, June 13, and June 21, 2009.

At the revocation hearing, Tolar pleaded not true to the State's allegations. The district court then proceeded to hear evidence. Erin Morgan, a probation officer, testified regarding

Tolar's alleged failure to obtain suitable employment and pay various fees and costs. The remainder of the evidence concerned the alleged burglaries.

Matthew Thompson, a doctor of veterinary medicine and owner of the Cedar Park Animal Clinic, testified that the clinic was burglarized on three occasions in 2009—March 29, June 13, and June 21. Thompson became aware of the first burglary on March 30, when he noticed that approximately $948.00 in cash and some controlled substances were missing from the safe in his office. However, there were no signs of forced entry into the building, which led Thompson to conclude that "someone had used a key."

After the first burglary, Thompson installed an external padlock on the outer cabinet drawer in which the safe was located. Despite this additional security measure, the clinic was again burglarized on June 13. This time, Thompson determined that $1,754.30 had been stolen from the safe, along with some Valium. Again, there were no signs of forced entry into the clinic, and Thompson became increasingly suspicious that one of his employees was involved.

After the second burglary, Thompson installed a video surveillance system in the office, installed a new padlock on the outer cabinet drawer, and activated additional security features on the safe. Nevertheless, a third burglary was committed at the clinic on June 21. This time, according to Thompson, the safe had been severely damaged, the security camera "was torn down and dangling by the hard wire," and the computer server that had captured the images recorded by the camera had been stolen. Although nothing had been stolen from inside the safe, Thompson discovered that $96.00 had been stolen from the cash register.

One of the employees at the clinic was Tolar's wife, Michelle Mason. On the morning after the third burglary had occurred, Mason called in sick and did not come into work. Thompson testified that this raised his suspicion about her possible involvement in the burglaries.

Mason, who was ultimately cleared of any involvement in the burglaries, cooperated with the authorities during the investigation and testified at the revocation hearing. Mason testified that she was one of the employees who was in charge of taking money from the cash register to the safe at the end of the day. According to Mason, Tolar would often accompany her to the clinic on the weekends, assist her with her job duties, and, on one occasion, "helped install a hard drive into one of the computers." Also, Tolar "would sometimes be there when we were doing the money at night." Mason believed that Tolar was aware of the surveillance system that had been installed following the second burglary. Mason also testified that she had a key to the office that she kept in her purse and that Tolar had access to her purse.

Mason explained that on June 21, the night of the third burglary, Tolar had left the house at approximately 9:30 p.m., claiming that he had to complete a special mission for "a rapid response unit for the military."[1] Mason recalled that Tolar took with him a green nylon bag, a flashlight, a ski cap, and blue gloves. According to Mason, Tolar returned home at approximately 11:30 p.m., opened his wallet, and showed Mason $90.00, which Tolar claimed he had received from "being the one that captured the guy that [his military unit was] going after." The following

---

[1] According to Mason, she was told by Tolar "that he was in the Air Force and then he cross[] trained over into [the] Marines." Mason added, "I later found out that that was untrue."

morning, Mason acknowledged, Tolar wrote her a fake doctor's note and encouraged her not to go into the office.

Mason was questioned by the police shortly thereafter. She denied knowing anything about the burglaries, and the police turned their attention to Tolar. They asked Mason to assist in the investigation, she agreed, and the police told her to search her house for "anything odd" that "wasn't supposed to be there." Underneath the stairs on her porch, Mason found a garbage bag that contained a computer server. She also found a crowbar in their spare bedroom. Mason brought the evidence to the clinic and turned it over to Detective Tammy Barnett of the Cedar Park Police Department, who determined that the server inside the garbage bag was the same server that had been stolen from the clinic. Mason and Barnett then connected the server to a monitor at the clinic and watched the surveillance footage of the night of June 21. In the video, Mason saw a man burglarizing the clinic who she recognized as her husband. Mason also observed that the man in the video was using the same green bag that Tolar had taken with him on the night of the third burglary.

Detective Barnett also testified at the hearing. Barnett testified that after the investigation was complete, Mason was no longer a suspect in the burglaries and Tolar was believed to be the perpetrator. According to Barnett, the person in the surveillance video was a white male who appeared to be "prying . . . that cabinet open with a pry bar or some type of pry tool." Barnett testified that the tool matched the description of the crowbar that Mason had found in the spare bedroom of her home. Barnett further testified that, according to the time shown on the video, the burglary had occurred at 10:35 p.m. This was during the time period that, according to Mason, Tolar was away from the house on his "special mission."

4

"Due to the totality of the circumstances and the evidence," Barnett concluded "that Mr. Tolar is the one that committed the burglary" on June 21. Barnett also believed, based on her conversations with Mason, that Tolar had committed the other burglaries on March 29 and June 13. This was because Mason had told Barnett that Tolar "had left on those evenings or those nights for a period of time," and "he always came back with an amount of cash that was consistent or, you know, fairly consistent with what was missing from the clinic."

At the conclusion of the hearing, the district court found the administrative violations to be true. The district court also found the "last" burglary allegation to be true.[2] Although the district court stated that it was "fairly certain" that Tolar had committed the first burglary, it concluded that there was not "enough evidence" to find that allegation to be true. The district court made no finding as to the second burglary allegation. Having found that Tolar violated the terms and conditions of his community supervision as alleged, the district court granted the State's motion to adjudicate and subsequently sentenced Tolar to fifteen years' imprisonment. This appeal followed.

Tolar's court-appointed attorney has filed a motion to withdraw supported by a brief concluding that the appeal is frivolous and without merit. The brief meets the requirements of *Anders v. California* by presenting a professional evaluation of the record demonstrating why there are no arguable grounds to be advanced. *See* 386 U.S. at 744-75; *see also Penson v. Ohio*, 488 U.S. 75 (1988); *High v. State*, 573 S.W.2d 807 (Tex. Crim. App. 1978); *Currie v. State*, 516 S.W.2d 684

___

[2] The district court referred to this burglary as having been committed on June 13, 2009, even though the last burglary alleged was committed on June 21, 2009. Based on our review of the record, it is clear that the district court was actually referring to the June 21 burglary, as most of the evidence presented at the hearing, including the surveillance footage, concerned that particular offense. In his brief, counsel for appellant reaches the same conclusion. The State agrees.

(Tex. Crim. App. 1974); *Jackson v. State*, 485 S.W.2d 553 (Tex. Crim. App. 1972); *Gainous v. State*, 436 S.W.2d 137 (Tex. Crim. App. 1969). Tolar received a copy of counsel's brief and was advised of his right to examine the appellate record and to file a pro se brief. No pro se brief has been filed.

We have reviewed the record and counsel's brief and agree that the appeal is frivolous and without merit. We find nothing in the record that might arguably support the appeal. Counsel's motion to withdraw is granted.

However, we have found that the judgment of conviction contains clerical errors. First, the judgment incorrectly reflects findings by the district court that Tolar committed all three alleged burglaries when, in fact, the district court found that Tolar committed only the "last" burglary alleged. Second, the judgment lists all three burglaries having been committed in March. But according to the State's allegations and the evidence presented at the revocation hearing, only one of the burglaries was committed in March. The other two burglaries, including the one the district court found to be true, were committed in June.[3]

This Court has the authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993); *Smith v. State*, 176 S.W.3d 907, 920 (Tex. App.—Dallas 2005, pet. ref'd) (citing *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd)); *see also Tolbert v. State*, No. 03-10-00245-CR, 2011 Tex. App. LEXIS 858, at *2-3 (Tex. App.—Austin Feb. 4,

---

[3] Counsel pointed out these clerical errors in his brief and the State, in its brief, does not dispute them.

2011, no pet. h.) (mem. op., not designated for publication) (modifying judgment to delete findings that appellant had violated community supervision on grounds that had been abandoned by State at revocation hearing). Accordingly, we modify the judgment to reflect the district court's finding that Tolar "committed the subsequent criminal offense of burglary of a building . . . on or about the 21st day of June, 2009 . . . ." We delete the language in the judgment referring to the other two subsequent criminal offenses.

As modified, the judgment of conviction is affirmed.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Modified and, as Modified, Affirmed

Filed: April 14, 2011

Do Not Publish