COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                       NOS.  2-07-118-CR

        2-07-119-CR

 

 

JUAN MANUEL RAMOS                                                        APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.  Introduction

Appellant Juan Manuel Ramos appeals his
convictions for possession of a controlled substance and possession of a
firearm by a felon.  In four issues,
Ramos challenges the legal and factual sufficiency of the evidence to support
both of his convictions.  We will affirm.








 

II.  Factual Background

Detective Moi Tran, a narcotics detective with
the Carrollton Police Department, received intelligence from a school resource
officer.  The school resource officer
said that someone he knew had gone to a house located at 1826 Kensington Drive
in Carrollton and had observed an illegal tattoo parlor operating in the
garage, that a peephole existed from the garage to the outside, and that drugs
were present in the garage.  Detective
Tran also received intelligence regarding weapons at the location. 

Following up on this information, Detective Tran
and other officers conducted surveillance of the house.  The officers noted that most of the activity
at the house occurred late at night.  One
night, Detective Tran drove by the house, obtained the license plate numbers of
the vehicles parked at the house, and ran them to see whom the vehicles were
registered to.  Detective Tran also
researched real estate records to determine who owned the house.  She also performed Atrash
runs@ to
ascertain whose name was on the mail received at the house.[2]









As a result of three trash runs that Detective
Tran performed at the house, she found illegal substances and evidence of
narcotics use.[3]  Based on the evidence discovered in her trash
runs, Detective Tran obtained a search warrant for the house. 

On August 3, 2006, Detective Tran went to execute
the no-knock warrant at the house.  She
was accompanied by the SWAT team, an operational support unit working patrol,
and a K-9 unit.  As the group approached
the house, officers observed a car leaving the house and stopped it.  The driver of the car was Ramos=s wife,
Latonya; her younger brother or a relative was with her in the car.  Latonya told the officers that she lived with
Ramos at the house. 

The SWAT team entered the house through the front
door, using a breaching ram and throwing multiple flash-bang grenades into the
house.  Officers found Ramos and two
children in the house. 








When Detective Tran came into the house, she saw
that the officers had Ramos seated in the living room.  Because she was assigned as the primary
narcotics agent, she was responsible for doing a walk-through of the residence
to determine the layout of the house, to determine whether there were any weapons
that were exposed or that had been missed by the SWAT team, to determine
whether there were any substances in plain view, and to determine where
everyone was situated so that she could assign an agent to search each room. 

During the search of the house, a K-9 unit
alerted on the water heater closet in the garage near Ramos=s tattoo
workstation, and inside the closet 
officers found a dusty baggie of cocaine.  In that same water heater closet, officers
also found a red straw, which signified to Detective Tran that Athey=re
snorting cocaine.@ 
Testing revealed that the net weight of the contents in the baggie was
0.01 grams and that the substance contained in the baggie was cocaine.  However, no viable fingerprints were obtained
from the baggie. 








Detective Tran and Officer Sanchez, the K-9
handler, had begun searching the master bedroom closet for narcotics when
Detective Tran was called outside.  When
Detective Tran returned, Officer Sanchez notified her that he had located an
SKS assault rifle in the master bedroom closet, which was shared by Ramos and
his wife.  No viable fingerprints were
obtained from the rifle. 

The only fingerprints that the State entered into
evidence were those contained in Ramos=s pen
packet and those taken by Investigator Jack Grassman on the day of the
trial.  Grassman compared the two sets of
fingerprints and found that they matched, concluding that Ramos was the same
person who had been convicted of the felony offense in the pen packetCunlawful
possession of a controlled substance, to-wit, cocaine in June 2001. 

At the conclusion of the evidence, the jury found
Ramos guilty of the offense of possession of a controlled substance and guilty
of the offense of possession of a firearm by a felon.  The jury assessed punishment at 180 days=
confinement for the offense of possession of a controlled substance and at five
years=
confinement for the offense of possession of a firearm by a felon.  The trial court sentenced Ramos in accordance
with the jury=s recommendations.  This appeal followed.

III.  Sufficiency Standards of Review

A.     Legal Sufficiency








In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App.
2000).  Thus, when performing a legal
sufficiency review, we may not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the fact-finder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@ 
Hooper v. State, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007).  We must presume that the fact-finder resolved
any conflicting inferences in favor of the prosecution and defer to that
resolution.  Jackson, 443 U.S. at
326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.








The sufficiency of the evidence should be
measured by the elements of the offense as defined by the hypothetically
correct jury charge for the case.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); Bowden v. State,
166 S.W.3d 466, 470 (Tex. App.CFort
Worth 2005, pet. ref=d).  Such a charge would be one that accurately
sets out the law, is authorized by the indictment, does not unnecessarily
restrict the State=s theories of liability, and
adequately describes the particular offense for which the defendant was
tried.  Gollihar v. State, 46
S.W.3d 243, 253 (Tex. Crim. App. 2001); Malik, 953 S.W.2d at 240.  The law as authorized by the indictment means
the statutory elements of the charged offense as modified by the charging
instrument.  See Curry v. State,
30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

The standard of review is the same for direct and
circumstantial evidence cases.  Clayton,
235 S.W.3d at 778; Hooper, 214 S.W.3d at 13.

B.     Factual Sufficiency








When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Watson v.
State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas v. State,
175 S.W.3d 795, 799 (Tex. Crim. App. 2005). 
We then ask whether the evidence supporting the conviction, although
legally sufficient, is nevertheless so weak that the fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s determination is manifestly
unjust.  Watson, 204 S.W.3d at
414-15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000).  To reverse under the second
ground, we must determine, with some objective basis in the record, that the
great weight and preponderance of all the evidence, though legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417.








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the fact-finder=s.  Johnson, 23 S.W.3d at 12; Cain v.
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Thus, we must give due deference to the
fact-finder=s determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint on appeal.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).  

IV.  Sufficiency of Evidence to Support Conviction
For 

Possession
of Controlled Substance

 

In his first and second issues, Ramos argues that
the evidence is legally and factually insufficient to support the jury=s
finding that he possessed the cocaine found in the water heater closet in the
garage because the State failed to link it to him.  Specifically, Ramos contends that the State
failed to establish that he had exclusive control over the garage where the
baggie of cocaine residue was found or that he knew that the package contained
cocaine or even of its presence in the water heater closet.








The State charged Ramos with Apossess[ion
of] a controlled substance, to-wit: 
cocaine, in an amount of less than one (1) gram by aggregate weight
including any adulterants or dilutants.@[4]  See Tex.
Health & Safety Code Ann. '
481.115(a) (Vernon 2003).  To prove
possession of a controlled substance, the State had to prove that Ramos (1)
exercised actual care, custody, control, or management over the contraband and
(2) that he knew the matter possessed was contraband.  See id. ''
481.002(38), 481.115(a); Deshong v. State, 625 S.W.2d 327, 329 (Tex.
Crim. App. [Panel Op.] 1981); Taylor v. State, 106 S.W.3d 827, 830 (Tex.
App.CDallas
2003, no pet.).

The State does not have to prove that the accused
had exclusive possession of the contraband; joint possession is sufficient to
sustain a conviction.  See Cude v.
State, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986).  When there is no evidence that the appellant
was in exclusive control of the place where the contraband was found, however,
the State must offer additional, independent facts and circumstances that Alink@ the
accused to the contraband.  See
Poindexter v. State, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005); Deshong,
625 S.W.2d at 329; see also Evans v. State, 202 S.W.3d 158, 161 n.9
(Tex. Crim. App. 2006) (AWe have used that term >affirmative
links,= but we
recognize that >affirmative= adds
nothing to the plain meaning of >link.=  Henceforth, we will use only >link= so that
it is clear that evidence of drug possession is judged by the same standard as
all other evidence.@).  The links between Ramos and the contraband
must be established by either direct or circumstantial evidence.  See Poindexter, 153 S.W.3d at 406.








No formula of facts exists to dictate a finding
of links sufficient to support an inference of knowing possession.  See Taylor, 106 S.W.3d at 830.  It is the logical force of the evidence, and
not the number of links, that supports a fact-finder=s
verdict.  See Evans, 202 S.W.3d at
166.  Possible links include but are not
limited to the following:  (1) whether
the defendant was present when the drugs were found; (2) whether the drugs were
in plain view; (3) the defendant=s
proximity to and the accessibility of the drugs; (4) whether the defendant was
under the influence of drugs when arrested; (5) whether the defendant possessed
other contraband or drugs when arrested; (6) whether the defendant made any
incriminating statements when arrested; (7) whether the defendant attempted to
flee; (8) whether the defendant made furtive gestures; (9) whether there was an
odor of drugs; (10) whether other contraband or other drug paraphernalia was
present; (11) whether the defendant owned or had the right to possess the place
where the drugs were found; (12) whether the place the drugs were found was
enclosed; (13) whether the defendant was found with a large amount of cash; and
(14) whether the conduct of the defendant indicated a consciousness of
guilt.  Id. at 162 n.12.








In this case, the dusty baggie of cocaine residue
that the K-9 unit alerted to was found after Detective Tran had performed three
consecutive trash runs at 1826 Kensington Drive that confirmed what
intelligence had reportedCthat an illegal tattoo parlor
was being operated and that there were drugs present.  Although the testimony at trial did not establish
exactly where Ramos was found in the house when the search warrant was
executed, it did establish that he was the only adult in the house when the
drugs were found.  Inside the same water
heater closet, near the baggie with cocaine residue, officers located a plastic
straw that they believed to be for use in snorting cocaine.  A business card for the tattoo parlor
advertised that Monolo Montoya, a/k/a Manny[5]
operated the tattoo parlor located in the house=s
garage.  Latonya told Detective Tran that
the substances found belonged to Ramos. 
The enclosed water heater closet was close to and accessible from the
work area Ramos occupied in the garage tattoo parlor.  

Detective Tran testified, however, that she did
not see anything on Ramos=s tattoo work table in the
garage that would indicate narcotics use and that she was told that there were
no fingerprints on the baggie. 













Although this evidence satisfies less than the
full series of indicia listed above, viewing the evidence in a favorable or
neutral light, the foregoing evidence is sufficient to enable a rational
fact-finder to link RamosCwho had a prior conviction for
possession of cocaineCto the cocaine found in the
water heater closet in his garage tattoo parlor.  See Poindexter, 153 S.W.3d at 405,
411-12 (concluding that appellant exercised care, custody, control, and
management over the contraband and that appellant knew the substance possessed
was contraband because there was no evidence that would support a conclusion
that appellant was an innocent bystander to someone else=s drug
operations within his own home where officers found cocaine hidden in ceiling
of master bedroom=s linen closetCa secret
place that was accessible to appellant as a resident but not to a casual
visitor).  We hold that evidence is
legally and factually sufficient to link Ramos to the cocaine residue.  See Poindexter, 153 S.W.3d at 405,
412; Berrum v. State, No. 11-01-00011-CR, 2002 WL 32341848, at *2-3
(Tex. App.CEastland Jan. 10, 2002, no pet.)
(not designated for publication) (holding that evidence was legally and
factually sufficient to link appellant to cocaine that was found in a closet
underneath the stairs, which was conveniently accessible to appellant);  Thompson v. State, No. 07-99-00403-CR,
2000 WL 987303, at *1-2 (Tex. App.CAmarillo
July 18, 2000, no pet.) (not designated for publication) (holding that,
although evidence satisfied less than the full series of indicia, evidence was
legally sufficient to link appellant to cocaine found in a space heater in hall
closet); Matthews v. State, No. 01-97-01348-CR, 1999 WL 233510, at *4-5
(Tex. App.CHouston [1st Dist.] Apr. 22,
1999, pet. ref=d) (not designated for
publication) (holding that evidence was legally and factually sufficient to support
jury=s
finding that appellant was guilty of possession of cocaine that was found in
bedroom closet that appellant shared with his wife).  Cf. Pierce v. State, No.
03-06-00492-CR, 2007 WL 4269796, at *15-16 (Tex. App.CAustin
Dec. 5, 2007, no pet.) (mem. op.) (not designated for publication) (holding
that evidence was legally insufficient to connect appellant to methamphetamine
lab at house because evidence revealed that appellant had moved and was no
longer living at residence where lab was found).  We overrule Ramos=s first
and second issues.

V.  Sufficiency of Evidence to Support Conviction
For 

Possession
of a Firearm by a Felon

 

In his third and fourth issues, Ramos argues that
the evidence is legally and factually insufficient to support the jury=s
finding that he possessed the firearm that officers found in the master bedroom
closet.  Specifically, Ramos contends
that there was no evidence that he exercised actual care, control, or custody
of the firearm and that there is no evidence from which the jury could have
determined that he was aware that the firearm was in his closet. 








Texas Penal Code section 46.04 provides that a
person who has been convicted of a felony commits an offense if he possesses a
firearm after the conviction and before the fifth anniversary of the person=s
release from confinement.  Tex. Penal Code Ann. ' 46.04
(Vernon Supp. 2007).  Ramos does not
challenge the evidence introduced by the State showing that he was previously
convicted of the felony of unlawful possession of cocaine within the past five
years.  Instead, he argues only that he
did not possess the firearm that officers found.  Our analysis will therefore focus on this
narrow argument.








Possession is defined by the penal code as Aactual
care, custody, control, or management.@  Tex. Penal
Code Ann. ' 1.07(a)(39) (Vernon Supp.
2007).  When there is no evidence that
the appellant was in exclusive control of the place where the firearm was
found, the State must offer additional, independent facts and circumstances
that link him to the firearm.  Smith
v. State, 176 S.W.3d 907, 916 (Tex. App.CDallas
2005, pet. ref=d).  The links between Ramos and the firearm may
be established by either direct or circumstantial evidence.  See Poindexter, 153 S.W.3d at
406.  In determining whether sufficient
links exist, we examine the same factors we looked to in connection with Ramos=s first
and second issues, such as whether the firearm was in plain view, whether Ramos
owned the premises where the firearm was found, whether he was in close
proximity to the firearm and had ready access to it or whether it was found on
him, whether he attempted to flee, whether his conduct indicated a
consciousness of guilt, whether he had a special connection to the firearm,
whether the firearm was found in an enclosed space, and whether he made
incriminating statements.  Smith,
176 S.W.3d at 916.  It is the logical
force of the factors, not the number of factors present, that determines
whether the elements of the offense have been established.  Id.

As mentioned above, while Ramos was detained in
the living room, Detective Tran and Officer Sanchez had begun searching the
master bedroom closet for narcotics when Detective Tran was called
outside.  Officer Sanchez thereafter
located an SKS assault rifle with no bullets in it and pointed it out to
Detective Tran when she came back inside the house.  The evidence did not reveal the exact
location within the master bedroom closet where the rifle was found, and no
viable fingerprints were found on the rifle. 
Officers noted that the master bedroom closet contained mail addressed
to Latonya as well as pictures of and mail addressed to Ramos and that there
was female clothing on one side and male clothing on the other side of the
closet.[6]  Based on these findings, Detective Tran
testified that she believed that Latonya and Ramos shared the closet.  Pictures admitted into evidence showed that
the closet was neat and tidy. 













Viewed in the light most favorable to the
verdict, a rational trier of fact could have found from the foregoing evidence
that Ramos possessed the firearm that officers discovered in the master bedroom
closet, which Ramos shared with his wife. 
The pictures of the well-organized master bedroom closet indicated that
it would be difficult to conceal an SKS assault rifle from someone who presumably
went into the closet every day to retrieve clothes and shoes.  Viewing all the evidence in a neutral light,
the evidence that Ramos shared the closet with his wife and that there were no
viable fingerprints on the rifle slightly controverts the evidence of guilt but
is not so weak that the fact-finder=s
determination is clearly wrong and unjust. 
We therefore hold that the evidence is legally and factually sufficient
to prove that Ramos knew of, exercised control over, and therefore possessed
the rifle.  See Smith v. State,
No. 12-06-00021-CR, 2007 WL 2178541, at *3 (Tex. App.CTyler
July 31, 2007, no pet.) (mem. op.) (not designated for publication) (holding
that evidence was legally and factually sufficient to support conviction for
unlawful possession of firearm when pistol was found in plain view in linen
closet next to bedroom where appellant slept); Austin v. State, Nos.
14-00-01389-CR, 14-00-01390-CR, 2002 WL 370045, at *3 (Tex. App.CHouston
[14th Dist.] Mar. 7, 2002, no pet.) (not designated for publication) (holding
that evidence was legally and factually sufficient to support conviction for
unlawful possession of firearm that officers found in bedroom closet because
closet contained mail addressed to appellant); Holland v. State, Nos.
05-99-00821-CR, 05-99-00822-CR, 2002 WL 115582, at *7 (Tex. App.CDallas
Jan. 30, 2002, pet. ref=d) (not designated for
publication) (holding that evidence was legally sufficient to support
conviction for unlawful possession of firearm that officers found in back
center closet that was accessible to appellant).  We overrule Ramos=s third
and fourth issues.

VI.  Conclusion

Having overruled all of Ramos=s
issues, we affirm the trial court=s
judgment.

 

SUE
WALKER

JUSTICE


 

PANEL A:   CAYCE,
C.J.; HOLMAN and WALKER, JJ.

 

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED: March 6, 2008

 











[1]See Tex. R. App. P. 47.4.





[2]Detective Tran testified
that once people put trash beside the curb, it is considered abandoned
property.  A Atrash run@ occurs when an officer
confiscates trash placed for pick up in front of a particular house and
examines the contents of the trash.  





[3]During Detective Tran=s trash run on July 17,
2006, she found a green leafy substance that tested positive for marijuana,
some drawings of tattoos, and a clear plastic baggie with a blue plastic straw
in it.  During Detective Tran=s trash run on July 24,
2006, she found green leafy stems and seeds that tested positive for marijuana,
a burnt joint, a cigarette, and some pictures. 
During Detective Tran=s trash run on July 31, 2006, she found personal
papers and mail in the name of Latonya Montoya and Christine Laparo (though no
testimony at trial explained the latter individual=s connection to the
house) and a plastic baggie that contained a white powdery residue that tested
positive for cocaine. 





[4]Possession is punishable
as a third-degree felony if the amount of the controlled substance is less than
one gram.  Tex. Health & Safety Code Ann. ' 481.115(b) (Vernon
2003).





[5]The record reflects that
Ramos used the alias Monolo Montoya, a/k/a Manny. 





[6]Although it was never
independently established that the men=s clothing in the master bedroom closet where the
rifle was found was Ramos=s clothing, there was no
suggestion that any other male lived at the house or shared a closet with
Latonya, who had admitted that Ramos was her husband; thus, it was at least Aa@ reasonable inference
that it was Ramos=s clothing and that he
lived there.  See Evans, 202
S.W.3d at 165.