

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-455-CR

DON ALLEN WESTBROOK                                      APPELLANT

V.

THE STATE OF TEXAS                                              STATE

------------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]
## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

------------

### I. INTRODUCTION

Pursuant to Texas Rule of Appellate Procedure 50, we withdraw our January 8, 2009 opinion and judgment and substitute the following. *See* Tex. R. App. P. 50. We write to clarify one statement in our original opinion.

---

[1] *See* Tex. R. App. P. 47.4.

Appellant Don Allen Westbrook appeals his conviction for unlawful possession of a firearm by a felon. In two points, Westbrook argues that the evidence is legally and factually insufficient to support his conviction. We will affirm.

## II. FACTUAL BACKGROUND

Deputies Howard R. Johnson, Jose Arroyo, and Raymond Garcia with the Tarrant County Sheriff's Department responded to a domestic disturbance dispatch at Hazel Fincher's residence on July 20, 2006, at 10:30 p.m. When they knocked on the front door, Westbrook answered and allowed them to enter the house.

Deputy Arroyo stayed with Westbrook and his son Cody in the game room while Deputy Johnson went to check on Westbrook's mother, Hazel Fincher, in the back of the residence. Deputy Johnson noted that Fincher was very upset and agitated. Deputy Johnson was concerned about Fincher's safety, so he collected a pistol and a shotgun from Fincher, and with her consent, he secured them in the trunk of the patrol car. After he collected and secured Fincher's pistol and shotgun, he asked Westbrook if there were any more weapons, and Westbrook said that he had a shotgun in his room. Deputy Johnson asked Westbrook which room was his, and Westbrook started walking

down the hallway;[2] Deputy Johnson stopped Westbrook and told him to point to where the weapon was located. Westbrook pointed to the left side of his bed where there was a denim shirt, and inside the shirt was a Browning twelve-gauge shotgun that had four shells in it. Deputy Johnson noted that Westbrook did not seem surprised when the denim shirt was removed to reveal the shotgun.

Deputy Arroyo also testified that when Deputy Johnson asked Westbrook if there were any weapons in the house, Westbrook said that there was one in his bedroom and that Deputy Johnson went in the bedroom and retrieved the shotgun, which had "a jacket hung over it or something." Deputy Arroyo said that Westbrook did not make any comments about who owned the gun.

Fincher testified that at the time of the incident, her daughter Karen Leigh Westbrook and Karen's son Brian Sauble were staying with her, along with Westbrook and his son Cody. Fincher said that Brian and Cody were occupying Westbrook's room and that Westbrook was spending the nights on the couch.

---

[2] In rebuttal, Deputy Johnson testified that Westbrook was standing in the game room next to the pool table when he asked him if there were any more weapons in the house. As soon as Deputy Johnson asked Westbrook the question, Westbrook started walking down the hall. Westbrook was not already walking down the hall when Deputy Johnson asked him the question.

She said that all of his clothes were in his car because she had become mad at him, and he was planning to move out.

Fincher testified that she loved guns and owned a .38 caliber pistol, which she kept under her mattress; a Browning twelve-gauge shotgun that she bought in 1985, which she normally kept in the closet in her bedroom; and a twelve-gauge pump shotgun that had originally belonged to her father. Fincher knew that Westbrook could not possess any guns. Fincher said that Westbrook "would not even pick up a gun, let alone have possession."

Fincher did not know how the Browning shotgun moved from her closet to Westbrook's bedroom. She said that Cody and Brian normally had to ask for her permission to use her guns but that Cody must have taken it without her permission. She also said that the deputy sheriff took her guns without her permission but admitted that she did not complain to him.

At the conclusion of Fincher's testimony, she said that she did not tell the deputy sheriff on the day of the incident that the Browning shotgun was not Westbrook's because the deputy sheriff did not ask her who the shotgun belonged to. She also admitted that she had never called the district attorney's office to relate to them the facts about the Browning shotgun that she testified to in court.

4

Brian, who was sixteen at the time of trial and Fincher's grandson and Westbrook's nephew, testified that he had gone to a friend's house at the time when Westbrook was arrested but that he was staying at his grandmother's house. He said that Westbrook had been sleeping on the couch and that he and his cousin Cody had been staying in Westbrook's room.

Brian stated that the Browning shotgun in question belonged to his grandmother. He testified that his grandmother kept the shotgun in her closet and that he had removed it from the closet and had taken it to Westbrook's room to clean it because he had planned to take it when he went hunting that weekend. According to Brian, Westbrook did not know that the shotgun was in his room. At the conclusion of Brian's testimony, he also admitted that he had never told the sheriff's department or the district attorney's office his story about the Browning shotgun or that he was concerned that his uncle had been unfairly charged with possession of it.

Karen,[3] Westbrook's sister, testified similarly to her son—that she and Brian were staying at Fincher's house but that they were not present when Westbrook was arrested. Karen likewise testified that Brian and Cody were staying in Westbrook's room. Karen said that she did not know there was a

---

[3] Karen admitted that she had been convicted of three felonies.

gun in Westbrook's room. She knew that her mother owned a pistol and a couple of shotguns, including the Browning, but she said that the pistol was under her mother's mattress and that the Browning shotgun was in the closet. Karen stated that Westbrook will not touch a gun. She further stated that police had stopped her for having a nonworking tail light and that she had told the officer who stopped her that the Browning was not Westbrook's.

Westbrook ultimately took the stand in his defense, and his testimony mimicked his relatives' testimonies—that he, his mother, Karen, Cody, and Brian were staying at his mother's house; that the boys slept in his room; that he slept in the game room or the den; that he knew his mother owned guns, including the shotgun at issue; and that he knew he could not possess a gun. He testified that he does not know how the shotgun arrived in his room. He testified numerous times that he noticed the shotgun when he walked by the entry to his room and that he pointed it out to the deputy sheriff.

During its closing argument, the State conceded that the shotgun was not owned by Westbrook but argued that the evidence was sufficient to show that he had possession of it. The trial court thereafter found Westbrook guilty of the offense of felon in possession of a firearm and sentenced him to fifteen years' confinement. This appeal followed.

### III. SUFFICIENCY STANDARDS OF REVIEW

#### A. Legal Sufficiency

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light

most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Bowden v. State*, 166 S.W.3d 466, 470 (Tex. App.—Fort Worth 2005, pet. ref'd). Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *Malik*, 953 S.W.2d at 240. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the charging instrument. *See Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

**B.    Factual Sufficiency**

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether

8

the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the judgment. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the factfinder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict

9

"often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9. An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

### IV. SUFFICIENT EVIDENCE TO SUPPORT CONVICTION

In his two points, Westbrook argues that the evidence is legally and factually insufficient to support his conviction for possession of a firearm by a felon. Specifically, Westbrook argues that his knowledge of the firearm's location and his presence at the location where the firearm was found is insufficient to establish actual care, custody, control, or management of the firearm.

Texas Penal Code section 46.04 provides that a person who has been convicted of a felony commits an offense if he possesses a firearm after the conviction and before the fifth anniversary of the person's release from confinement. Tex. Penal Code Ann. § 46.04(a)(1) (Vernon Supp. 2008). Westbrook does not dispute that he had a prior felony conviction. Instead, he

10

argues only that he did not possess the firearm that the deputies found. Our analysis will therefore focus on this narrow argument.

Possession is defined by the penal code as "actual care, custody, control, or management." Tex. Penal Code Ann. § 1.07(a)(39) (Vernon Supp. 2008). When there is no evidence that the appellant was in exclusive control of the place where the firearm was found, the State must offer additional, independent facts and circumstances that link him to the firearm. *Smith v. State*, 176 S.W.3d 907, 916 (Tex. App.—Dallas 2005, pet. ref'd). The links between Westbrook and the firearm may be established by either direct or circumstantial evidence. *See Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005); *see also Evans v. State*, 202 S.W.3d 158, 161–62 (Tex. Crim. App. 2006). In determining whether sufficient links exist, we look at factors, such as whether the firearm was in plain view, whether Westbrook owned the premises where the firearm was found, whether he was in close proximity to the firearm and had ready access to it or whether it was found on his person, whether he attempted to flee, whether his conduct indicated a consciousness of guilt, whether he had a special connection to the firearm, whether the firearm was found in an enclosed space, and whether he made incriminating statements. *Smith*, 176 S.W.3d at 916. It is the logical force of

11

the factors, not the number of factors present, that determines whether the elements of the offense have been established. *Id.*

As set forth above, two competing story lines were developed at trial. Both Deputy Johnson and Deputy Arroyo testified that after Deputy Johnson had collected a pistol and a shotgun from Fincher, he went to the game room and asked Westbrook whether there were any other weapons in the house and that Westbrook replied that he had a shotgun in his bedroom. Westbrook attempted to get in close proximity to the shotgun when he was taking Deputy Johnson to its location, but Deputy Johnson made him stop and point to it. Westbrook pointed to a denim shirt bundled next to Westbrook's bed. Deputy Johnson thereafter grabbed the denim shirt bundle next to Westbrook's bed, which he unwrapped to reveal a Browning twelve-gauge shotgun with four shells in it.

The contradictory story developed by Westbrook's relatives and Westbrook himself was that Westbrook had no knowledge of the shotgun, which was owned by his mother. Westbrook's relatives believed that Brian had removed the shotgun from his grandmother's closet and had taken it to Westbrook's room to clean it. Westbrook testified that he saw the shotgun when he walked by his room and pointed it out to the deputy sheriff, but

12

Deputy Johnson testified that he could not tell right away that the object near the bed was a shotgun because it was wrapped in a denim shirt.

The trial court, as the sole trier of facts, could have weighed the deputies' testimony more heavily based on credibility determinations than it weighed the testimony of Westbrook and his relatives. Where, as here, the factfinder weighs the evidence based on credibility, the factfinder may choose to believe some testimony and to disbelieve other testimony. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008) (reversing appellate court for holding evidence factually insufficient based on two conflicting stories). In *Lancon*, the court of criminal appeals explained that "an appellate court must give deference to a [factfinder's] decision regarding what weight to give contradictory testimonial evidence because the decision is most likely based on an evaluation of credibility and demeanor, which the [factfinder] is in a better position to judge." *Id.* at 706. The trial court was entitled to believe the testimony of the deputies and to disbelieve the testimony of Westbrook and his relatives, and this credibility determination does not render the evidence factually insufficient. *See id.*

Viewed in the light most favorable to the verdict, a rational trier of fact could have found from the foregoing evidence and testimony of the deputies that Westbrook possessed the firearm that the deputies discovered next to the

13

bed in his bedroom because he was able to directly point it out to deputies even though the shotgun was wrapped in a denim shirt. Viewing all the evidence in a neutral light, the evidence supporting the conviction—though controverted by the testimony that Westbrook's son and nephew were sleeping in his bedroom and that Westbrook did not own the shotgun—is not so weak that the factfinder's determination is clearly wrong and unjust. We therefore hold that the evidence is legally and factually sufficient to prove that Westbrook knew of, exercised control over, and therefore possessed the shotgun. *See Ramos v. State*, Nos. 02-07-00118-CR, 02-07-00119-CR, 2008 WL 623777, at *7 (Tex. App.—Fort Worth Mar. 6, 2008, pet. ref'd) (mem. op., not designated for publication) (holding that evidence was legally and factually sufficient to support conviction for unlawful possession of firearm when shotgun was found in master bedroom closet, which appellant shared with his wife); *Smith v. State*, No. 12-06-00021-CR, 2007 WL 2178541, at *3 (Tex. App.—Tyler July 31, 2007, no pet.) (mem. op., not designated for publication) (holding that evidence was legally and factually sufficient to support conviction for unlawful possession of firearm when pistol was found in plain view in linen closet next to bedroom where appellant slept); *Austin v. State*, Nos. 14-00-01389-CR, 14-00-01390-CR, 2002 WL 370045, at *3 (Tex. App.—Houston [14th Dist.] Mar. 7, 2002, no pet.) (not designated for publication) (holding that evidence was

14

legally and factually sufficient to support conviction for unlawful possession of firearm that officers found in bedroom closet because closet contained mail addressed to appellant); *Holland v. State*, Nos. 05-99-00821-CR, 05-99-00822-CR, 2002 WL 115582, at *7 (Tex. App.—Dallas Jan. 30, 2002, pet. ref'd) (not designated for publication) (holding that evidence was legally sufficient to support conviction for unlawful possession of firearm that officers found in back center closet that was accessible to appellant). We overrule Westbrook's two points.

## V. CONCLUSION

Having overruled Westbrook's two points, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: February 26, 2009