COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-455-CR

 

 

DON ALLEN WESTBROOK                                                     APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 396TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

    ON APPELLANT=S PETITION FOR
DISCRETIONARY REVIEW

 

                                              ------------

                                          I.  INTRODUCTION

Pursuant to Texas Rule of Appellate Procedure 50,
we withdraw our January 8, 2009 opinion and judgment and substitute the
following.  See Tex. R. App. P.
50.  We write to clarify one statement in
our original opinion.








Appellant Don Allen Westbrook appeals his
conviction for unlawful possession of a firearm by a felon.  In two points, Westbrook argues that the
evidence is legally and factually insufficient to support his conviction.  We will affirm.

                                    II.  FACTUAL BACKGROUND

Deputies Howard R. Johnson, Jose Arroyo, and
Raymond Garcia with the Tarrant County Sheriff=s
Department responded to a domestic disturbance dispatch at Hazel Fincher=s
residence on July 20, 2006, at 10:30 p.m. 
When they knocked on the front door, Westbrook answered and allowed them
to enter the house.








Deputy Arroyo stayed with Westbrook and his son
Cody in the game room while Deputy Johnson went to check on Westbrook=s
mother, Hazel Fincher, in the back of the residence.  Deputy Johnson noted that Fincher was very
upset and agitated.  Deputy Johnson was
concerned about Fincher=s safety, so he collected a
pistol and a shotgun from Fincher, and with her consent, he secured them in the
trunk of the patrol car.  After he
collected and secured Fincher=s pistol
and shotgun, he asked Westbrook if there were any more weapons, and Westbrook
said that he had a shotgun in his room. 
Deputy Johnson asked Westbrook which room was his, and Westbrook started
walking down the hallway;[2]
Deputy Johnson stopped Westbrook and told him to point to where the weapon was
located.  Westbrook pointed to the left
side of his bed where there was a denim shirt, and inside the shirt was a
Browning twelve-gauge shotgun that had four shells in it.  Deputy Johnson noted that Westbrook did not
seem surprised when the denim shirt was removed to reveal the shotgun.

Deputy Arroyo also testified that when Deputy
Johnson asked Westbrook if there were any weapons in the house, Westbrook said
that there was one in his bedroom and that Deputy Johnson went in the bedroom
and retrieved the shotgun, which had Aa jacket
hung over it or something.@  Deputy Arroyo said that Westbrook did not
make any comments about who owned the gun.








Fincher testified that at the time of the
incident, her daughter Karen Leigh Westbrook and Karen=s son
Brian Sauble were staying with her, along with Westbrook and his son Cody.  Fincher said that Brian and Cody were
occupying Westbrook=s room and that Westbrook was
spending the nights on the couch.  She
said that all of his clothes were in his car because she had become mad at him,
and he was planning to move out.

Fincher testified that she loved guns and owned a
.38 caliber pistol, which she kept under her mattress; a Browning twelve-gauge
shotgun that she bought in 1985, which she normally kept in the closet in her
bedroom; and a twelve-gauge pump shotgun that had originally belonged to her
father.  Fincher knew that Westbrook
could not possess any guns.  Fincher said
that Westbrook Awould not even pick up a gun,
let alone have possession.@

Fincher did not know how the Browning shotgun
moved from her closet to Westbrook=s
bedroom.  She said that Cody and Brian
normally had to ask for her permission to use her guns but that Cody must have
taken it without her permission.  She
also said that the deputy sheriff took her guns without her permission but
admitted that she did not complain to him.

At the conclusion of Fincher=s
testimony, she said that she did not tell the deputy sheriff on the day of the
incident that the Browning shotgun was not Westbrook=s
because the deputy sheriff did not ask her who the shotgun belonged to.  She also admitted that she had never called
the district attorney=s office to relate to them the
facts about the Browning shotgun that she testified to in court.








Brian, who was sixteen at the time of trial and
Fincher=s
grandson and Westbrook=s nephew, testified that he had
gone to a friend=s house at the time when
Westbrook was arrested but that he was staying at his grandmother=s
house.  He said that Westbrook had been
sleeping on the couch and that he and his cousin Cody had been staying in
Westbrook=s room.

Brian stated that the Browning shotgun in
question belonged to his grandmother.  He
testified that his grandmother kept the shotgun in her closet and that he had
removed it from the closet and had taken it to Westbrook=s room
to clean it because he had planned to take it when he went hunting that
weekend.  According to Brian, Westbrook
did not know that the shotgun was in his room. 
At the conclusion of Brian=s
testimony, he also admitted that he had never told the sheriff=s
department or the district attorney=s office
his story about the Browning shotgun or that he was concerned that his uncle
had been unfairly charged with possession of it.








Karen,[3]
Westbrook=s sister, testified similarly to
her sonCthat she
and Brian were staying at Fincher=s house
but that they were not present when Westbrook was arrested.  Karen likewise testified that Brian and Cody
were staying in Westbrook=s room.  Karen said that she did not know there was a
gun in Westbrook=s room.  She knew that her mother owned a pistol and a
couple of shotguns, including the Browning, but she said that the pistol was
under her mother=s mattress and that the Browning
shotgun was in the closet.  Karen stated
that Westbrook will not touch a gun.  She
further stated that police had stopped her for having a nonworking tail light
and that she had told the officer who stopped her that the Browning was not
Westbrook=s.

Westbrook ultimately took the stand in his
defense, and his testimony mimicked his relatives=
testimoniesCthat he, his mother, Karen,
Cody, and Brian were staying at his mother=s house;
that the boys slept in his room; that he slept in the game room or the den;
that he knew his mother owned guns, including the shotgun at issue; and that he
knew he could not possess a gun.  He
testified that he does not know how the shotgun arrived in his room.  He testified numerous times that he noticed
the shotgun when he walked by the entry to his room and that he pointed it out
to the deputy sheriff.

During its closing argument, the State conceded
that the shotgun was not owned by Westbrook but argued that the evidence was
sufficient to show that he had possession of it.  The trial court thereafter found Westbrook
guilty of the offense of felon in possession of a firearm and sentenced him to
fifteen years= confinement.  This appeal followed.








                            III.  SUFFICIENCY STANDARDS
OF REVIEW

A.     Legal Sufficiency 

In reviewing the legal sufficiency of the
evidence to support a conviction, we view all the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007).








This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State,
34 S.W.3d 912, 919 (Tex. Crim. App. 2000). 
Thus, when performing a legal sufficiency review, we may not re-evaluate
the weight and credibility of the evidence and substitute our judgment for that
of the factfinder.  Dewberry v. State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131
(2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@ 
Hooper v. State, 214 S.W.3d 9, 16B17 (Tex.
Crim. App. 2007).  We must presume that
the factfinder resolved any conflicting inferences in favor of the prosecution
and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.

The sufficiency of the evidence should be
measured by the elements of the offense as defined by the hypothetically
correct jury charge for the case.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); Bowden v. State,
166 S.W.3d 466, 470 (Tex. App.CFort
Worth 2005, pet. ref=d).  Such a charge would be one that accurately
sets out the law, is authorized by the indictment, does not unnecessarily
restrict the State=s theories of liability, and
adequately describes the particular offense for which the defendant was
tried.  Gollihar v. State, 46
S.W.3d 243, 253 (Tex. Crim. App. 2001); Malik, 953 S.W.2d at 240.  The law as authorized by the indictment means
the statutory elements of the charged offense as modified by the charging
instrument.  See Curry v. State,
30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

B.     Factual Sufficiency








When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Watson v.
State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas v. State,
175 S.W.3d 795, 799 (Tex. Crim. App. 2005). 
We then ask whether the evidence supporting the conviction, although
legally sufficient, is nevertheless so weak that the factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s determination is manifestly
unjust.  Watson, 204 S.W.3d at 414B15, 417;
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
judgment.  Watson, 204 S.W.3d at
417.








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the factfinder=s.  Johnson, 23 S.W.3d at 12; Cain v.
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Thus, we must give due deference to the
factfinder=s determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint on appeal.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

                      IV.  SUFFICIENT EVIDENCE TO SUPPORT CONVICTION

In his two points, Westbrook argues that the
evidence is legally and factually insufficient to support his conviction for
possession of a firearm by a felon. 
Specifically, Westbrook argues that his knowledge of the firearm=s
location and his presence at the location where the firearm was found is
insufficient to establish actual care, custody, control, or management of the
firearm.








Texas Penal Code section 46.04 provides that a
person who has been convicted of a felony commits an offense if he possesses a
firearm after the conviction and before the fifth anniversary of the person=s
release from confinement.  Tex. Penal
Code Ann. ' 46.04(a)(1) (Vernon Supp.
2008).  Westbrook does not dispute that
he had a prior felony conviction. 
Instead, he argues only that he did not possess the firearm that the
deputies found.  Our analysis will
therefore focus on this narrow argument.








Possession is defined by the penal code as Aactual
care, custody, control, or management.@  Tex. Penal Code Ann. '
1.07(a)(39) (Vernon Supp. 2008).  When
there is no evidence that the appellant was in exclusive control of the place
where the firearm was found, the State must offer additional, independent facts
and circumstances that link him to the firearm. 
Smith v. State, 176 S.W.3d 907, 916 (Tex. App.CDallas
2005, pet. ref=d).  The links between Westbrook and the firearm
may be established by either direct or circumstantial evidence.  See Poindexter v. State, 153 S.W.3d
402, 406 (Tex. Crim. App. 2005); see also Evans v. State, 202 S.W.3d
158, 161B62 (Tex.
Crim. App. 2006).  In determining whether
sufficient links exist, we look at factors, such as whether the firearm was in
plain view, whether Westbrook owned the premises where the firearm was found,
whether he was in close proximity to the firearm and had ready access to it or
whether it was found on his person, whether he attempted to flee, whether his
conduct indicated a consciousness of guilt, whether he had a special connection
to the firearm, whether the firearm was found in an enclosed space, and whether
he made incriminating statements.  Smith,
176 S.W.3d at 916.  It is the logical
force of the factors, not the number of factors present, that determines
whether the elements of the offense have been established.  Id.

As set forth above, two competing story lines
were developed at trial.  Both Deputy
Johnson and Deputy Arroyo testified that after Deputy Johnson had collected a
pistol and a shotgun from Fincher, he went to the game room and asked Westbrook
whether there were any other weapons in the house and that Westbrook replied
that he had a shotgun in his bedroom. 
Westbrook attempted to get in close proximity to the shotgun when he was
taking Deputy Johnson to its location, but Deputy Johnson made him stop and
point to it.  Westbrook pointed to a
denim shirt bundled next to Westbrook=s
bed.  Deputy Johnson thereafter grabbed
the denim shirt bundle next to Westbrook=s bed,
which he unwrapped to reveal a Browning twelve-gauge shotgun with four shells
in it.








The contradictory story developed by Westbrook=s
relatives and Westbrook himself was that Westbrook had no knowledge of the
shotgun, which was owned by his mother. 
Westbrook=s relatives believed that Brian
had removed the shotgun from his grandmother=s closet
and had taken it to Westbrook=s room
to clean it.  Westbrook testified that he
saw the shotgun when he walked by his room and pointed it out to the deputy
sheriff, but Deputy Johnson testified that he could not tell right away that
the object near the bed was a shotgun because it was wrapped in a denim shirt.

The trial court, as the sole trier of facts,
could have weighed the deputies=
testimony more heavily based on credibility determinations than it weighed the
testimony of Westbrook and his relatives. 
Where, as here, the factfinder weighs the evidence based on credibility,
the factfinder may choose to believe some testimony and to disbelieve other
testimony.  See Lancon v. State,
253 S.W.3d 699, 707 (Tex. Crim. App. 2008) (reversing appellate court for
holding evidence factually insufficient based on two conflicting stories).  In Lancon, the court of criminal
appeals explained that Aan appellate court must give
deference to a [factfinder=s]
decision regarding what weight to give contradictory testimonial evidence
because the decision is most likely based on an evaluation of credibility and
demeanor, which the [factfinder] is in a better position to judge.@  Id. at 706.  The trial court was entitled to believe the
testimony of the deputies and to disbelieve the testimony of Westbrook and his
relatives, and this credibility determination does not render the evidence
factually insufficient.  See id.













Viewed in the light most favorable to the
verdict, a rational trier of fact could have found from the foregoing evidence
and testimony of the deputies that Westbrook possessed the firearm that the
deputies discovered next to the bed in his bedroom because he was able to
directly point it out to deputies even though the shotgun was wrapped in a
denim shirt.  Viewing all the evidence in
a neutral light, the evidence supporting the convictionCthough
controverted by the testimony that Westbrook=s son
and nephew were sleeping in his bedroom and that Westbrook did not own the
shotgunCis not
so weak that the factfinder=s
determination is clearly wrong and unjust. 
We therefore hold that the evidence is legally and factually sufficient
to prove that Westbrook knew of, exercised control over, and therefore
possessed the shotgun.  See Ramos v.
State, Nos. 02-07-00118-CR, 02-07-00119-CR, 2008 WL 623777, at *7 (Tex.
App.CFort
Worth Mar. 6, 2008, pet. ref=d) (mem.
op., not designated for publication) (holding that evidence was legally and
factually sufficient to support conviction for unlawful possession of firearm
when shotgun was found in master bedroom closet, which appellant shared with
his wife); Smith v. State, No. 12-06-00021-CR, 2007 WL 2178541, at *3
(Tex. App.CTyler July 31, 2007, no pet.)
(mem. op., not designated for publication) (holding that evidence was legally
and factually sufficient to support conviction for unlawful possession of
firearm when pistol was found in plain view in linen closet next to bedroom
where appellant slept); Austin v. State, Nos. 14-00-01389-CR,
14-00-01390-CR, 2002 WL 370045, at *3 (Tex. App.CHouston
[14th Dist.] Mar. 7, 2002, no pet.) (not designated for publication) (holding
that evidence was legally and factually sufficient to support conviction for
unlawful possession of firearm that officers found in bedroom closet because
closet contained mail addressed to appellant); Holland v. State, Nos.
05-99-00821-CR, 05-99-00822-CR, 2002 WL 115582, at *7 (Tex. App.CDallas
Jan. 30, 2002, pet. ref=d) (not designated for
publication) (holding that evidence was legally sufficient to support
conviction for unlawful possession of firearm that officers found in back
center closet that was accessible to appellant).  We overrule Westbrook=s two
points.

                                          V.  CONCLUSION

Having
overruled Westbrook=s two points, we affirm
the trial court=s judgment.

 

 

SUE
WALKER

JUSTICE

 

PANEL: DAUPHINOT,
GARDNER, and WALKER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: February 26,
2009











[1]See Tex. R. App. P. 47.4.





[2]In rebuttal, Deputy
Johnson testified that Westbrook was standing in the game room next to the pool
table when he asked him if there were any more weapons in the house.  As soon as Deputy Johnson asked Westbrook the
question, Westbrook started walking down the hall.  Westbrook was not already walking down the
hall when Deputy Johnson asked him the question.





[3]Karen admitted that she
had been convicted of three felonies.