02-09-175-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00175-CR

 

 


 
 
 Anthony Lee Williams
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

------------

 

FROM THE 78th
District Court OF Wichita COUNTY

------------

MEMORANDUM
OPINION[1]

------------

I.  Introduction

          Appellant
Anthony Lee Williams pleaded guilty to possession of a controlled substance.  Williams
also pleaded true to an enhancement paragraph regarding a prior controlled
substance conviction.  At sentencing, the court found true the State’s
allegation that Williams committed the extraneous offense of possessing a
firearm while a felon and later sentenced Williams to fifteen years’
confinement in the Texas Department of Criminal Justice Institutional Division.
 In two issues, Williams contends first that the State failed to prove beyond a
reasonable doubt the extraneous offense of possession of a firearm by a felon and
second that his constitutional right to due process was denied when the State
failed to inform Williams that evidence had been destroyed.  We will affirm.

II.  Background

          The
Wichita Falls Police Department (“WFPD”) executed a search warrant on a home
located at 108 Farris Street on March 1, 2007.  Police found Williams inside
the kitchen with crack cocaine in plain view on the kitchen table in close
proximity to Williams.  Officers additionally found Ecstasy pills in the back
bedroom.

          On
December 12, 2007, SWAT executed another warrant on the same premises.  Officer
Vermillion, the first to enter the room, observed Williams standing at the foot
of the bed with his hands up.  Vermillion ordered him to lie on the bed. 
Officer Eipper testified that he observed Williams lying on a bed as the sole
occupant in the bedroom.  Officers recovered mail with Williams’s name on it in
the bedroom, along with a .22 caliber revolver on a surface near the bed.

          WFPD
again executed a warrant on the same house on October 14, 2008.  Williams was
found behind the home with crack cocaine in his pocket.[2]

          At
the punishment hearing, Officer Gerald Shulte of the WFPD testified regarding
the search warrant executed on December 12, 2007.  Schulte testified that the
SWAT team made entry for the police and found Williams in the bedroom with the
mail and the loaded revolver.  Schulte did not see Williams in the bedroom
himself, but he did see the revolver and believed it was located on a
nightstand next to the bed or the headboard.  Schulte said the mail in the
bedroom had Williams’s name on it, but he was not sure if the address on the
mail was 108 Farris Street.

          Officer
Charles Eipper testified that he was a member of the SWAT team that executed
the December 12 search warrant.  Eipper testified that he saw Williams on the
bed in the bedroom and also saw the revolver in plain view lying on a shelf
within reach of someone on the bed.  Officer Walter Vermillion testified that
he was also a member of the SWAT team executing the December 12 warrant and that
he also saw Williams in the bedroom with the revolver either next to the bed or
on the shelf.

          Officer
Karl King of the WFPD narcotics unit testified that on December 12, he searched
the premises after the house was emptied of all occupants.  King testified that
he found the .22 caliber revolver loaded with a single round on top of two VCR
tapes on the headboard of the bed in the same room where Williams was found.  King
also testified that he located mail belonging to Williams in the same room.  Upon
cross-examination, King said that the gun and mail had been destroyed pursuant
to a destruction order prior to the time of the sentencing hearing.  The court
found that the State had proved the extraneous offense beyond a reasonable
doubt.  This appeal followed.

III.  Analysis

          A.      Extraneous
Offense

          In
his first issue, Williams argues the trial court erred by finding that he
committed the unadjudicated extraneous offense of unlawful possession of a
firearm by a felon and that the court thus abused its discretion by considering
the offense when assessing Williams’s punishment.

          Article
37.07, section 3(a)(1) of the Texas Code of Criminal Procedure provides in
relevant part that regardless of the plea and whether the punishment is
assessed by the judge or jury, evidence may be offered by the State and the
defendant as to any matter the court deems relevant to sentencing, including
evidence of an extraneous crime or bad act that is shown beyond a reasonable
doubt to have been committed by the defendant, regardless of whether he has
previously been charged with or finally convicted of the crime or act.  Tex.
Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2010).  Williams
faced three separate charges at trial, one of which was unlawful possession of
a firearm by a felon, a charge the State agreed to dismiss and instead use only
as punishment evidence.  Section 46.04 of the Texas Penal Code provides in part
that a person commits the offense of unlawful possession of a firearm by a
felon if the defendant was previously convicted of a felony offense and
possessed a firearm after the conviction and before the fifth anniversary of
the person’s release from confinement.  Tex. Penal Code Ann. § 46.04
(Vernon Supp. 2010).  The record establishes that Williams was released from
incarceration in 2004 after being convicted for the felony offense of delivery
of a controlled substance.

          The
penal code defines possession as “actual care, custody, control, or
management.”  Id. § 1.07(a)(39) (Vernon Supp. 2010).  A person
commits a possession offense only if he voluntarily possesses the prohibited
item.  Id. § 6.01(a) (Vernon 2003).  Possession is voluntary if the
possessor knowingly obtains or receives the thing possessed or is aware of his
control of the thing for a sufficient time to permit him to terminate his
control.  Id. § 6.01(b).

          The
State’s evidence must establish that the accused’s connection with the firearm
was more than just fortuitous.  Brown v. State, 911 S.W.2d 744, 747
(Tex. Crim. App. 1995).  If the firearm is not found on the defendant’s person
or is not seen in the defendant’s exclusive care, custody, control, or
management, as in this case, the State must offer additional, independent facts
and circumstances that link the defendant to the firearm.  Bates v. State,
155 S.W.3d 212, 216–17 (Tex. App.—Dallas 2004, no pet.); see Sutton v. State,
328 S.W.3d 73, 76 (Tex. App.—Fort Worth 2010, no pet.) (citing Villarreal v.
State, Nos. 02-07-00329-CR, 02-07-00330-CR, 2009 WL 671042, at *1 (Tex.
App.—Fort Worth Mar. 12, 2009, pet. ref’d) (mem. op., not designated for
publication) (“The . . . links doctrine also applies to the
possession of firearms.”)).  The purpose of linking the accused to the firearm
is to protect innocent bystanders from conviction solely on their fortuitous
proximity to the firearm.  See Poindexter v. State, 153 S.W.3d 402, 406
(Tex. Crim. App. 2005).  Such links may be established by either direct or
circumstantial evidence.  Evans v. State, 202 S.W.3d 158, 161–62 (Tex.
Crim. App. 2006).

          An
appellate court examines factors such as whether the firearm was in plain view,
whether the defendant owned the premises where the firearm was found, whether
the defendant made incriminating statements, whether the defendant was in close
proximity to the firearm and had ready access to it, whether the defendant
attempted to flee, whether the defendant’s conduct indicated a consciousness of
guilt, whether the defendant had a special connection to the firearm, and
whether the firearm was found in an enclosed space.  Smith v. State, 176
S.W.3d 907, 916 (Tex. App.—Dallas 2005, pet. ref’d); see Westbrook v.
State, No. 02-07-00455-CR, 2008 WL 5672533, at *4 (Tex. App.—Fort Worth
Feb. 26, 2009, pet. ref’d) (mem. op., not designated for publication).  Significantly,
it is the logical force of the factors, not the number of factors present, that
determines whether the elements of the offense have been established.  See
Smith, 176 S.W.3d at 916.

          Thus,
we turn to the evidence that would affirmatively link Williams to the firearm
in such a manner and to such an extent that a reasonable inference may arise
that Williams knew of the existence of the firearm and that he exercised
control over the firearm.  The primary source of evidence presented in this
case to establish affirmative links was testimony by witnesses present at the
scene.  Williams claims the testimony was conflicting.  In this regard, we
recognize that the factfinder is the sole judge of the credibility of the
witnesses and may accept or reject any part or all of the testimony given by
State or defense witnesses.  Johnson v. State, 23 S.W.3d 1, 9 (Tex.
Crim. App. 2000).  With this in mind, we view the evidence in the light most
favorable to the verdict.

          Several
facts link Williams to the revolver found at 108 Farris Street.  First,
Williams was the only occupant in the bedroom where the revolver was located
when police entered the home.  The first officer who entered the bedroom,
Vermillion, testified that Williams was standing at the foot of the bed and that
in order to secure the premises, Williams was ordered onto the bed.  There was
no one else present in the bedroom at the time officers entered and found
Williams.  Second, the revolver was in plain view.  All officers testified that
the revolver was immediately visible on a surface directly next to the bed.  Third,
while Williams did not own the house, there is no dispute that he was residing
at 108 Farris Street and according to Williams’ own briefing, “the testimony
should lead one to believe it was his residence.”  Not only had Williams been
named on prior search warrants executed on the home, but there was also mail
found in the bedroom at the Farris Street address with Williams’s name on it.  For
purposes of our analysis here, the facts indicate that Williams was a resident
of the property where the revolver was located.  Finally, while Williams
contends that he was only in close proximity to the revolver such that he had
ready access to the firearm because he was ordered onto the bed by officers,
this argument is unavailing.  “Ready access” does not mean immediate access,
and the fact remains that the revolver was found in an enclosed bedroom, within
which Williams was the only occupant, and that the gun was readily available as
it lay out in the open.  See Ramos v. State, Nos. 02-07-00118-CR,
02-07-00119-CR, 2008 WL 623777, at *7 (Tex. App.—Fort Worth Mar. 6, 2008, pet.
ref’d) (mem. op., not designated for publication) (holding that evidence was
sufficient to support conviction for unlawful possession of firearm when assault
rifle was found in master bedroom closet, which appellant shared with his
wife); Smith v. State, No. 12-06-00021-CR, 2007 WL 2178541, at *3 (Tex.
App.—Tyler July 31, 2007, no pet.) (mem. op., not designated for publication)
(holding that evidence was sufficient to support conviction for unlawful
possession of firearm when pistol was found in plain view in linen closet next
to bedroom where appellant slept); Austin v. State, Nos. 14-00-01389-CR,
14-00-01390-CR, 2002 WL 370045, at *3 (Tex. App.—Houston [14th Dist.] Mar. 7,
2002, no pet.) (not designated for publication) (holding that evidence was
sufficient to support conviction for unlawful possession of firearm that
officers found in bedroom closet because closet contained mail addressed to
appellant); Holland v. State, Nos. 05-99-00821-CR, 05-99-00822-CR, 2002
WL 115582, at *7 (Tex. App.—Dallas Jan. 30, 2002, pet. ref’d) (not designated
for publication) (holding that evidence was sufficient to support conviction
for unlawful possession of firearm that officers found in back center closet which
was accessible to appellant).

          Viewing
all the evidence in the light most favorable to the verdict and giving due
deference to the factfinder’s responsibility to resolve conflicts in testimony,
weigh the evidence, and draw reasonable inferences, we find that the evidence is
sufficient to support the trial court’s finding that Williams committed the
extraneous offense of unlawful possession of a firearm by a felon and thus the trial
court properly considered the offense in Williams’s sentencing.  We overrule
Williams’s first issue.

          B.      Preservation
of Evidence

          In
his second issue, Williams argues that the State violated his constitutional
right of due process by failing to disclose that evidence found at the scene,
namely the revolver and mail, had been destroyed prior to trial.  Williams
argues that this failure amounted to a Brady violation because it
prevented counsel from adequately advising his client.  Brady v. Maryland,
373 U.S. 83, 87 S. Ct. 1194, 1196–97 (1963).  We disagree with Williams
that the State’s destruction of the mail and revolver prior to trial violated his
right of due process.

          In
determining whether the pretrial destruction of evidence constitutes a denial
of due process of law under the United States Constitution, the Supreme Court
draws a distinction between “material exculpatory evidence” and “potentially
useful evidence.”  Salazar v. State, 298 S.W.3d 273, 277–78 (Tex.
App.—Fort Worth 2009, pet. ref’d) (quoting Arizona v. Youngblood, 488
U.S. 51, 57–58, 109 S. Ct. 333, 337 (1988)).  A federal due process violation
occurs whenever a state suppresses or fails to disclose “material exculpatory
evidence,” regardless of whether the State acted in bad faith.  Id. at 278
(quoting Illinois v. Fisher, 540 U.S. 544, 547, 124 S. Ct. 1200,
1201 (2004)).  But the Supreme Court has held that if a defendant seeks to
prove a federal due process violation based on a state’s destruction of
“potentially useful evidence,” the defendant must show that the State acted in
bad faith in destroying the evidence.  Id. (citing Fisher, 540
U.S. at 547–48, 124 S. Ct. at 1202; Youngblood, 488 U.S. at 57–58,
109 S. Ct. at 337).  “Potentially useful evidence” is described as
evidentiary material “of which no more can be said than that it could have been
subjected to tests, the results of which might have exonerated the defendant.”  Id.
(quoting Youngblood, 488 U.S. at 57–58, 109 S. Ct. at 337). 
Supreme Court jurisprudence further divides cases involving nondisclosure of
evidence into two areas:

(a)     Brady addresses exculpatory
evidence still in the government’s possession.  Little v. State, 991
S.W.2d 864, 866 (Tex. Crim. App. 1999) (citing Brady, 373 U.S. at 90, 83
S. Ct. at 1198);

(b)     Youngblood and Trombetta
address cases in which the government no longer possesses the disputed
evidence.  Little, 991 S.W.2d at 866. (citing California v.
Trombetta, 467 U.S. 479, 104 S. Ct. 2528 (1984)).

          Under
this paradigm, when a defendant is alleging that the State failed to disclose the
fact that it had lost or destroyed evidence, such information is considered
evidence in the possession of the State and his claim still falls under Brady
and its progeny; thus, it must be shown that:  (1) the prosecutor failed
to disclose evidence, (2) the evidence is favorable to the defendant, and (3) the
evidence is material, such that there is a reasonable probability that had the
evidence been disclosed to the defense, the outcome of the trial would have
been different.  United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct.
3375, 3383 (1985).

          To
the extent Williams argues that he was denied the opportunity for a fair trial
based on the destruction of the evidence because “no one knows what the weapon
bears (fingerprints) or whether it [was] operable because it was destroyed,”
Williams fails to meet his burden under Youngblood.  In order to prevail
on this claim, Williams must show more than that the gun could have been
subjected to additional tests which may potentially have led to exculpatory
results.  Additionally, there is no evidence to indicate the State acted in bad
faith when destroying the gun and mail prior to trial.  To the contrary, Williams
himself admits that “there is no indication that the destruction of the
evidence was done in bad faith,” and Williams’s counsel elicited testimony that
the State’s destruction of both the gun and the mail was pursuant to a court
order.  Because Williams has failed to show that the State destroyed
potentially useful evidence in bad faith, we overrule this issue.

          As
an ancillary point, Williams contends that the Texas Constitution’s Due Course
of Law Clause provides a greater level of protection than the Due Process
Clause of the Fourteenth Amendment.  But a number of Texas courts of appeals,
including this court, have held that the Texas Constitution does not provide a
greater level of protection than the United States Constitution regarding the
State’s loss or destruction of evidence in a criminal prosecution.  See
Salazar, 298 S.W.3d at 278–79; Jackson v. State, 50 S.W.3d 579, 588–89
(Tex. App.—Fort Worth 2001, pet. ref’d); see also State v. Vasquez, 230
S.W.3d 744, 750–51 (Tex. App—Houston [14th Dist.] 2007, no pet.); McGee v.
State, 210 S.W.3d 702, 705 (Tex. App.—Eastland 2006, no pet.); Salazar
v. State, 185 S.W.3d 90, 92 (Tex. App.—San Antonio 2005, no pet.); State
v. Rudd, 871 S.W.2d 530, 533 (Tex. App.—Dallas 1994, no pet.); Saldana
v. State, 783 S.W.2d 22, 23 (Tex. App.—Austin 1990, no pet.).  We agree
with our previous holding and the holding of our sister courts of appeals that
the Due Course of Law Clause in the Texas Constitution provides the same
protection as the Due Process Clause in the United States Constitution regarding
claims that the State’s destruction of potentially useful evidence in a
criminal prosecution constitutes a constitutional violation.  Williams is
required to demonstrate that the State acted in bad faith, which he has not
done.

          To
the extent that Williams argues that he was denied a fair trial based on the
State’s alleged failure to disclose the fact that the gun and mail were
destroyed prior to trial, this argument also fails.  There is no evidence in
the record to support the claim that the State failed to disclose the fact that
the gun and mail had been destroyed.  Defense counsel elicited the information
upon cross-examination of Officer King.  Although Williams now alleges on
appeal that this testimony was the first time he learned the evidence had been
destroyed, trial counsel did not object at trial seeking exclusion for
nondisclosure, nor did he request a continuance to allow time to develop the
facts regarding the destruction at any time after eliciting the testimony
regarding the destroyed evidence.  State v. Fury, 186 S.W.3d 67, 73–74
(Tex. App.—Houston [1st Dist.] 2005, pet. ref’d) (“A defendant’s failure to
request a continuance indicates that the tardy disclosure of evidence was not
prejudicial.”).  Because Williams cannot meet the first prong under Brady,
which requires a showing that the State failed to disclose the fact that the
evidence had been destroyed, we overrule his second issue.

IV.  Conclusion

          Having
overruled Williams’s two issues, we affirm the trial court’s judgment.

 

 

BILL MEIER
JUSTICE

 

PANEL:  MCCOY, MEIER, and GABRIEL, JJ.

 

DO NOT PUBLISH

Tex. R. App.
P. 47.2(b)

 

DELIVERED: 
May 12, 2011









[1]See Tex. R. App. P. 47.4.





[2]As a result of the
searches, the State charged Williams with two counts of possession of a
controlled substance and one count of possessing a firearm while still a
felon.  Williams pleaded guilty to one of the possession charges and proceeded
to trial on the other two remaining charges.  The State then decided to dismiss
the remaining two charges and use them at punishment only.  But the dismissals
were not the result of a plea bargain; thus, we have jurisdiction to address
Williams’s issues on appeal.  See Shankle v. State, 119 S.W.3d 808, 813
(Tex. Crim. App. 2003) (holding that open plea resulting from State’s agreement
to dismiss other charges can be plea bargain prohibiting right of appeal).